[No. 20182.  Department One.  February 14, 1927.]

W. R. BAILEY, *Respondent,* v. FLORENCE BAILEY, *Appellant.*[1]

[1] DIVORCE (75, 80)—MODIFICATION OF DECREE—DIVISION OF PROP-
ERTY. An award of $12,000 to the husband as his share of the
property, on granting a divorce, will be modified as to condi-
tions and time of payment, where a better adjustment appears
to be a payment of $1,500 in cash and monthly payments there-
after of $60 a month until all is paid.

Appeal from a judgment of the superior court for
Yakima county, Hawkins, J., entered December 31,
1925, upon findings in favor of the plaintiff, adjudica-
ting property rights in an action for divorce, after a
hearing before the court.  Modified.

*Thos. H. Wilson* and *Richards, Gilbert & Conklin,*
for appellant.

*H. J. Snively,* for respondent.

MAIN, J.—This is a divorce action.  The trial re-
sulted in an interlocutory decree of divorce and an
adjudication of the property rights of the parties.
From this decree, the defendant appeals.  The con-
troversy here is over the property settlement.  As we
understand it, no contention is being made relative to
the divorce.

The respondent and appellant were married in the
state of Illinois on July 7, 1895, and there have been
born to them four children, two boys and two girls.
The elder boy, Dewey, at the time of the trial was
twenty-six years of age.  In 1902, the family moved
from the state of Illinois and located in the city of
Yakima.  Soon after they arrived there, they bought

¹Reported in 253 Pac. 121; 253 Pac. 132.

some lots or a tract of land and engaged in truck farming or gardening. Both the appellant and the respondent worked hard and were economical. In time this property was paid for and had increased in value. In 1914, the respondent leased a ranch in Yakima county, a part of which had been set to fruit trees, but these at that time had not come into bearing. For the first two years, no rent was paid, the owner of the property giving its use for the care of the young orchard. The third year, a small rental was required, and this increased until the year 1919 when the owner wanted a rental of one thousand dollars. The respondent objected to paying this sum and, after some discussion, the owner proposed that the appellant and Dewey take the lease of the property, which was verbal as had the others been. This was agreed to. That was a good year and they made something like five thousand dollars or six thousand dollars. The Yakima property was sold for approximately four thousand dollars. The respondent and the appellant then purchased what is referred to as the Naches property for the sum of twenty thousand dollars, making a payment at the time of ten thousand dollars, which money was produced by the sale of the Yakima property above mentioned and the profits on the ranch leased during the year 1919.

In 1920, the appellant brought an action against the respondent for a divorce. The parties then entered into a written contract by which the appellant was to have the management and control of all the property. After this agreement was entered into, the divorce action was discontinued and the parties continued to live together until on or about May, 1921, when the respondent left home and, beginning in July of that year, the appellant paid him fifty dollars per month up to the time of the trial. For a number of years prior to that time, there had been much friction be-

tween the appellant and respondent as well as between him and his sons. He would leave home, stay away for a time and then come back and stay for a while. After the Naches property was purchased in 1920, the two boys continued to work on the ranch, and it was largely managed by Dewey. At the time of the trial, the land and personal property was of the value of about thirty-five thousand dollars, the land being worth at that time twenty thousand dollars. The trial court made the following findings:

"The court finds that the plaintiff is entitled to the sum of $12,000 for his share in said property, in lieu of any specific interest in said property. That the defendant is entitled to and is hereby awarded all of said property, personal or real. That one-third of said $12,000, together with interest thereon at the rate of 6% per annum from the 17th day of April, 1925, shall be paid to the plaintiff within sixty (60) days from the date of the entry of an Interlocutory Order; $2,000 on June 1st, 1926, and $2,000 on December 1st, 1926, with interest thereon at 6% per annum from the 17th day of April, 1925; and one-third thereof on December 1st, 1927, with interest thereon from April 17th, 1925, at the rate of 6% per annum. That the plaintiff is entitled to a lien upon the real estate, hereinbefore described, to secure said payments. That the defendant shall also support said children, and the plaintiff shall be entitled to be indemnified by her if he is compelled in any manner to support said children during their minority.

"That the plaintiff is in poor health, and at times, unable to earn anything, but that he can supplement any award given him by his own labors to some extent; and that $60 per month during his life is a sufficient amount to properly support and care for him, with whatever additional amount he may be able to supplement by his own labor. That his life expectancy, at the time of the trial, was 12 7/10 years. That, under all of the circumstances of the case, the plaintiff is not entitled to an equal share of the property. That his

share should be based especially upon his own necessities, and, with that principally in view, plaintiff is entitled to the sum of $12,000.''

The twelve thousand dollars at six per cent interest would produce sixty dollars per month for the entire period of the respondent's life expectancy and leave the principal intact.

[1] We are inclined to disagree with the trial court as to the manner in which the twelve thousand dollars should be paid. The property holdings of the parties at the time of the trial, aside from the four thousand dollars which came from the Yakima property, was almost entirely the result of the labors of the appellant and the two boys, neither of the latter having received wages. Dewey testified that it was the understanding that he was to have one-fourth of the profits, though it all remained as one property and was never segregated. To require the appellant to raise the twelve thousand dollars within the time limited by the decree would place upon her a very great burden. In addition to this, if the money should be paid and should not be conserved by the respondent, his two sons would nevertheless be under obligation to support and maintain him. Under all the circumstances of the case, it seems to us that a better adjustment would be to require the appellant to pay to the respondent for his support and maintenance one thousand five hundred dollars within thirty days after the remittitur from this court shall have been filed with the clerk of the superior court and sixty dollars on the first day of each and every month thereafter so long as respondent shall live, or until the full sum of twelve thousand dollars has been paid. The deferred payments should be made a lien upon the real estate, but should not draw interest. Should the appellant at any time desire to remove the lien of the deferred payments, she may do so by paying

into the registry of the court the entire balance of the twelve thousand dollars then unpaid.

The cause will be remanded to the superior court with directions to modify the decree as herein indicated.

Tolman, Mitchell, and Fullerton, JJ., concur.