[No. 25819. Department Two. November 6, 1935.]

MATILDA F. FITCH, *Respondent*, v. THE NATIONAL BANK
OF COMMERCE OF SEATTLE, *Appellant*.[1]

*Jerome K. Kuykendall*, for appellant.

*Douglas D. Mote*, for respondent.

BEALS, J.—Briefly stated, the pertinent facts giving
rise to this litigation are as follows: Joseph B. Smith
and Matilda F. Smith (now Maltida F. Fitch) were
for many years husband and wife. In an action for
divorce brought by the wife, an interlocutory order
was entered August 19, 1932, followed by a final de-
cree, which was entered February 20, 1933. By the

[1]Reported in 50 P. (2d) 910.

interlocutory order, the care and custody of the minor children of the parties was awarded to Mrs. Smith; the order then reciting "that the property settlement heretofore made and agreed upon between the parties hereto, be, and the same is hereby approved, ratified and confirmed." By an order bearing date April 3, 1935, the judge of the superior court who signed the interlocutory order and also the decree of divorce signed an order directing "that the property settlement entered into between the parties to this action under date of July 9, 1932, be filed in this action." This order recited that, at the time the cause was heard, the property settlement had been submitted to the court and approved by the interlocutory order above referred to.

During the month of December, 1933, Mrs. Smith became Mrs. Fitch, and by that name instituted this action, as hereinafter set forth.

February 9, 1933, Joseph B. Smith executed and delivered to the National Bank of Commerce of Seattle his promissory note in writing for the sum of $470, together with interest at the rate of eight per cent per annum. January 19, 1934, the bank sued Mr. Smith on this note; judgment in the bank's favor having been entered July 17, 1934. Mrs. Fitch was not a party to this action.

July 31, 1933, Mr. Smith recovered judgment against Inez Uhland and G. A. Tembreull for a sum in excess of five thousand dollars; Mrs. Fitch not being included as a party to this action. March 1, 1935, the bank caused an execution to be issued on its judgment against Smith, pursuant to which the sheriff levied upon the judgment rendered in Smith's favor against Uhland and Tembreull.

Prior to March 14, 1935, the date fixed for the sale under the bank's execution, Mrs. Fitch instituted an

action in which she prayed that the sale be enjoined and that a decree be entered declaring her to be the owner of an undivided one-half interest in the judgment rendered in Smith's favor, upon which the bank sought to levy execution. Mrs. Fitch based her claim of ownership of a one-half interest in this judgment upon the property settlement which had been entered into between Mr. Smith and herself, in which settlement it was agreed that Mrs. Fitch (then Mrs. Smith) should own as her sole and separate property one-half interest in the "contract with G. A. Tembreull (Osner-Mehlhorn assets), Aero Alarm assets, and Bi-Metallic fee;" it being Mrs. Fitch's contention that the reference in the property settlement to the contract with Mr. Tembreull referred to the obligation upon which judgment was later rendered in Mr. Smith's favor, as above set forth. In her complaint in her action for an injunction, Mrs. Fitch also alleged the divorce proceedings between herself and Mr. Smith, and that the judgment entered in favor of the bank against Mr. Smith was a separate judgment against Mr. Smith only, and nowise binding upon Mrs. Fitch or any property which had theretofore been the community property of Mrs. Fitch and Mr. Smith while they were husband and wife.

Answering Mrs. Fitch's complaint, the bank denied the material allegations thereof and pleaded affirmatively that the judgment entered in Mr. Smith's favor against Uhland and Tembreull constituted the community or joint property of Mr. Smith and Mrs. Fitch; that, for a long time prior to the termination of the divorce proceedings instituted against Mr. Smith, he was indebted to the bank, and that this indebtedness was evidenced by notes which were from time to time renewed, and that the note upon which the bank recovered judgment against Mr. Smith evidenced an in-

debtedness which dated back a long time prior to the date of the property settlement and the divorce proceedings above referred to. The bank further alleged that, at the time of the property settlement between the Smiths, the community was insolvent.

Prior to the date fixed for the sale under the bank's execution, as above set forth, Mr. Smith filed in the action which the bank had instituted against him a petition alleging that the note which he had executed in the bank's favor was his sole and separate obligation; that the judgment entered in his favor against Uhland and Tembreull was, in fact, the joint property of Mr. Smith and his former wife, and that the latter owned an undivided one-half interest therein; he also praying that the sale be enjoined.

The complaint filed by Mrs. Fitch and the petition filed by Mr. Smith were consolidated and set specially for trial as an equitable action for April 26, 1935. Under date April 30, 1935, the superior court entered a decree adjudging that Matilda F. Fitch is the owner of an undivided one-half interest in the judgment rendered in favor of Mr. Smith and against Inez Uhland and G. A. Tembreull, restraining the sale of the interest in the judgment awarded to Mrs. Fitch, and awarding costs in her favor. The sale proceeded as to the half interest owned by Mr. Smith in the judgment, which was bid in by the bank.

From the decree adjudging Mrs. Fitch to be the owner of a one-half interest in the judgment and restraining the sale as to this one-half interest, the bank has appealed.

Error is assigned upon the rejection of certain evidence offered by appellant, upon the refusal of the trial court to find in appellant's favor upon its affirmative defenses, upon the denial of appellant's motion to dismiss the proceeding, upon the ruling of the trial court

to the effect that appellant's judgment against Smith was an individual judgment only, and that property, formerly the community property of Mr. Smith and Mrs. Fitch, was not subject to execution in satisfaction thereof; appellant also complaining of the entry of judgment in favor of Mrs. Fitch and of the denial of its motion for a new trial.

Mrs. Fitch, the respondent on this appeal, brought this action for the purpose of establishing her previously undisclosed ownership of a one-half interest in the judgment which had been entered in Joseph B. Smith's favor and against Mrs. Uhland and Mr. Tembreull. In resisting this action, the bank, appellant herein, sought to prove that the indebtedness upon which it had recovered judgment against Joseph B. Smith was, in fact, an indebtedness for which the former community of Mr. Smith and respondent was liable. The trial court, while permitting respondent to introduce evidence which tended to establish her ownership of a one-half interest in the Uhland-Tembreull judgment, refused to allow appellant to introduce evidence which would tend to prove that the former community of the Smiths, as husband and wife, was responsible to appellant upon the note upon which it had recovered judgment against Joseph B. Smith alone.

We do not find that this court has previously passed upon any question exactly similar to that now presented, but some of our previous decisions are helpful, as having determined analogous questions.

In the case of *Woste v. Rugge,* 68 Wash. 90, 122 Pac. 988, it was held that one who had recovered judgment against a husband alone, based upon his negligent act in the conduct of community business, could bring a later action for the purpose of subjecting the property of the community to the lien of the judgment. The trial court had sustained a demurrer to the com-

plaint, and upon appeal from a judgment dismissing the action, this court held that the trial court had committed error, reversed the judgment appealed from, and directed that the action proceed. In the course of its opinion, this court said:

"Appellant contends that these facts show the judgment to be a community obligation, because it grew out of acts performed by Henry Rugge in the conduct of the community business; and that, while the wife was not a defendant in that action and the question of the obligation being against the community was not rendered conclusive against her by the judgment, that question can be determined in this action. If the judgment rested upon a contractual obligation, there would seem to be no room for argument against these contentions, in the light of our former decisions holding that a judgment rendered for a community debt against the husband in an action where the wife is not made a defendant in the name, is enforcible out of the community property, though the question of the community character of the debt will remain open to the wife to be determined in some appropriate action or proceeding. [Citing cases.] The plaintiff may have the question determined in the original action by making the wife a defendant with the husband. [Citing cases.] Or the wife may have the question determined by intervention in the original action. [Citing cases.]"

In the case of *McLean v. Burginger,* 100 Wash. 570, 171 Pac. 518, it appeared that, in an action brought against the maker of four promissory notes and the woman who had been his wife at the time the notes were executed, a joint judgment had been entered against both defendants. The woman appealed, contending that, as she had not signed the notes and as she and her former husband, who had signed them, had been divorced prior to the institution of the action on the notes, the trial court had erred in finding that the debts evidenced by the notes were community obligations and in entering a joint judgment upon which she

was personally liable. It was held that the trial court had properly found that the obligation was that of the former community, but that error had been committed in rendering a personal judgment against the appellant. Discussing this question, the court said:

"It is well settled in this state that neither the wife, personally, nor her separate estate is liable for the payment of community debts contracted by the husband. Upon the dissolution of the community by divorce, the common property awarded to the parties is subject to the payment of community debts. If not disposed of by the decree, the common property passes to the former spouses as tenants in common, likewise subject to the satisfaction of community obligations. In neither event, however, does the divorced wife or her separate estate become liable for community obligations contracted solely by the husband. Such obligations must thereafter be satisfied out of the same property or fund against which the creditor would have had the right to proceed during the existence of the community."

Questions somewhat similar to those considered in the case of *Woste v. Rugge, supra,* were argued to this court in the case of *Merritt v. Newkirk,* 155 Wash. 517, 285 Pac. 442, which was an action brought by husband and wife to set aside an execution sale pursuant to a judgment rendered in an action brought against the husband alone. It was held that a judgment rendered against a husband, whether based upon a contract or for his wrongful or negligent act, is presumptively a community obligation, and that the judgment creditor might rely upon this presumption and proceed to levy execution upon property belonging to the community. The case of *Woste v. Rugge, supra,* was referred to as establishing the proposition that the judgment creditor had the alternative right to bring an action for the purpose of subjecting certain property to the lien of

his judgment. Referring to these two rights existing in favor of the judgment creditor, the opinion states:

"However, the remedies are but alternative remedies. The judgment creditor may, before executing on the judgment, institute an action to determine the conclusive effect of his judgment, or he may cause an execution to issue on the judgment and cause such property as he deems subject to sale thereunder to be levied upon and sold, leaving it to those who assert adverse claims thereto to take such action as they deem necessary to protect their claimed rights.

"Nor does the procedure deny to the wife her day in court. As we say, the sale is presumptively valid, and the wife may act as she has acted in the cause before us; that is, institute an independent proceeding to have her claim of right adjudicated, and in that proceeding have her day in court."

Here, respondent has exercised her privilege of bringing an action to establish her right. She asks and receives "her day in court." Appellant, however, is also entitled, in its turn, to meet the changed situation shown by respondent, by evidence which tends to prove that, notwithstanding the truth of respondent's contention that she owns an interest in the judgment, appellant should nevertheless prevail because of the nature of the obligation upon which it recovered judgment against Mr. Smith.

The cases of *Bryant v. Stetson & Post Mill Co.*, 13 Wash. 692, 43 Pac. 931, and *First National Bank of Ritzville v. Cunningham*, 72 Wash. 532, 130 Pac. 1148, are also in point upon the questions here presented.

Respondent argues that, as the note upon which appellant recovered judgment against Mr. Smith was executed after the entry of the interlocutory order in the action for divorce brought by respondent against Mr. Smith, and as appellant failed to make respondent a party to that action, appellant cannot now in this

action introduce evidence which tends to prove that the note upon which it based its suit was, in fact, an obligation upon which the former community of respondent and Joseph B. Smith, as husband and wife, was liable. Respondent contends that the trial court did not hear the question of the nature of the judgment rendered against Mr. Smith and, on the contrary, refused to do so, for the reason that the obligation sued upon was, on its face and according to the allegations of the complaint and the findings of fact, the personal obligation of Mr. Smith, incurred after the entry of the interlocutory decree.

The findings of fact upon which respondent relies contain nothing which negatives appellant's claim that the note, in fact, represented an obligation upon which the community was responsible. The court found that Mr. Smith executed and delivered the note, that the plaintiff in that action (appellant here) was the owner of the note, that the same had matured, and that payment had been demanded and refused.

This is an equitable action, brought, as above stated, by respondent for the purpose of obtaining a decree adjudging her to be the owner of an undisclosed one-half interest in a judgment entered in favor of her former husband, based upon a contract in which respondent presumptively owned a community interest.

Appellant should have been allowed to introduce evidence tending to prove that the obligation upon which it recovered judgment against Joseph B. Smith was, in fact, an obligation upon which the community composed of respondent and her former husband was liable. The fact that the note executed by Joseph B. Smith bore date after the entry of the interlocutory order might possibly render it more difficult for appellant to prove its case, but affords no ground for re-

fusing appellant an opportunity to present its evidence.

The cases previously decided by this court and above referred to clearly establish the proposition that, on the one hand, a judgment creditor may in a subsequent action show the community character of the obligation upon which a judgment was entered in his favor against the husband alone; and, on the other hand, that a member of the community may in a subsequent action present evidence in support of a contention that certain property is not liable to execution upon such a judgment.

In the case at bar, the trial court properly allowed respondent to present her case, but refused appellant the right to introduce its evidence. This case clearly falls within the principle laid down in the cases cited, and the judgment appealed from is accordingly reversed, with directions to the trial court to grant appellant's motion for a new trial.

MAIN, HOLCOMB, BLAKE, and MITCHELL, JJ., concur.