[No. 130-40966-1.   Division One.   March 30, 1970.]
Panel 2

ARTHUR KNITTLE, *Appellant*, v. FORTUNA KNITTLE, *Respondent*.

*Samuel J. Steiner,* for appellant.

*John L. Vogel,* for respondent.

UTTER, J.—Fortuna Knittle, respondent, the divorced wife of Arthur Knittle, appellant, filed a motion in 1968 for an order fixing the amount of the judgment remaining unpaid for past due child support payments. The trial court heard testimony and entered an order establishing the total amount due, allowing collection of those sums that were not barred by the statute of limitations. The court ordered the judgment to run against the appellant and the community of appellant and his current wife.

Appellant presented testimony which he contended established the defenses of laches and estoppel. An objection on grounds of lack of relevancy was sustained. The appellant challenges this ruling on appeal and also contends the court erred in holding the past due support judgments were obligations of appellant's present marital community.

Respondent and appellant were married in 1946. Their only child was born in 1947. They were divorced in 1949 and the decree awarded custody of the child to respondent and directed appellant to pay $50 per month child support. Respondent remarried in 1949 and adoption proceedings were commenced with appellant's knowledge and approval.

Shortly thereafter, respondent and her new husband moved to California. The adoption was never completed although appellant at that time assumed the adoption had been completed. Respondent's marriage ended in divorce in 1954 and in 1955 appellant was then advised, for the first time, the adoption had not been completed. Support was provided by California welfare agencies for the child. They, in turn, demanded in 1956 and 1958 that appellant contribute funds to them to defray their expenses. Appellant remarried in 1960.

There was no testimony offered by appellant showing a change of position on his part in reliance on actions of the former wife. The trial court would have been justified

on these grounds alone in refusing to consider the defenses of laches and estoppel. *Den Adel v. Blattman,* 57 Wn.2d 337, 357 P.2d 159 (1960); *Rutter v. Rutter,* 59 Wn.2d 781, 370 P.2d 862 (1962). We do not comment on whether these defenses are available in an action to enforce judgments accruing by virtue of unpaid child support orders. See, however, *Wheeler v. Wheeler,* 37 Wn.2d 159, 222 P.2d 400 (1950) and *Herzog v. Herzog,* 23 Wn.2d 382, 161 P.2d 142 (1945).

Appellant urges the judgment is improper inasmuch as the child for whom the payments were ordered reached his majority prior to the time the proceedings were started and, further, that the judgment should not run against appellant's present marital community.

■ After a child reaches majority, contempt proceedings to enforce payment of past due support orders are no longer available, but the custodian of the children does not lose her right to collect arrearage in support by garnishment, attachment or execution. *Dawson v. Dawson,* 71 Wn.2d 66, 426 P.2d 614 (1967).

The final contention of appellant is that the court erred in holding past-due-support judgments are responsibilities of the appellant's present marital community.

Rather than attempting to fit the application of the enforcement of claim for accrued alimony or child support against a new community within existing community property rules, our court has, on grounds of "justice and reason," established rules in this area based on public policy. *Fisch v. Marler,* 1 Wn.2d 698, 715, 97 P.2d 147 (1939).

When confronted with a similar question, the Arizona court in *Gardner v. Gardner,* 95 Ariz. 202, 388 P.2d 417 (1964), held the whole of community property of a new community was liable for unpaid alimony to a former wife. The court there stated as its rationale: " 'Alimony is an allowance for support which is made upon considerations of equity and public policy.' ", and further commented: "Essentially, our decision in this case rests upon public policy.

The obligations of marriage cannot be thrown aside like an old coat when a more attractive style comes along."

■ In *Fisch,* the court ordered that in determining whether judgments for accrued alimony could be collected by garnishment from the present earnings of a former husband who had subsequently remarried, the following rules apply:

(1) The subsequent marriage of a divorced husband does not relieve him of his obligation to pay to his former wife permanent alimony as required by the decree of divorce, and the former wife has, and continues to have, a fixed and prior claim upon his earnings for the payment of such alimony. This rule finds particular support on grounds of justice and reason where there is a minor child or children of the former marriage.

(2) Garnishment is a proper proceeding to enforce such claims.

(3) The subsequent marriage of the divorced wife does not, of itself, terminate her fixed and prior claim upon the earnings of her former husband, whether he remarries or not, nor does her subsequent marriage *ipso facto* terminate her right to enforce her claim by garnishment. This rule is likewise particularly applicable in cases where there is a minor child or children of the former marriage.

(4) Although the claim of the divorced wife upon the earnings of her former husband is a fixed and prior one, it is not in all cases to be enforced to the point of exhaustion of such earnings, for the present wife also has a claim thereon which is entitled to consideration. Upon a showing by the present wife of necessitous circumstances particularly where there is a minor child or children of the husband's subsequent marriage, the court may make such adjustment and allocation of the husband's earnings as may appear to it to be just and equitable in the premises.

(5) For the purpose of securing or protecting such rights as she may have in the earnings of her husband, the present wife may intervene in any proceeding which affects such earnings.

The only decision subsequent to *Fisch* dealing with the problem of the liability of a community for a judgment of a

previous spouse for alimony is *Stafford v. Stafford,* 10 Wn.2d 649, 117 P.2d 753 (1941). The court there expressly narrowed its determination to the issue of whether an award of a lump sum for alimony in a divorce decree became a lien upon real property subsequently purchased by community funds. The holding was that it did not become a lien. The court reasoned that the inability of the husband to alienate or convey community real property without the consent of the wife made it unavailable to creditors, whereas the husband's broader control over the personal property of the community did make it available to creditors.[1] *Fisch* was distinguished on this basis.

We do not believe the holding in *Stafford* applies here. The language there used excluded the present situation when the court stated: "Cases holding that, where a decree of divorce is entered and there are children, . . . have no application here."

An additional reason for limiting the holding in *Stafford* has been suggested. It is based on a distinction expressly rejected in *Schramm v. Steele,* 97 Wash. 309, 166 P. 634 (1917). In *Schramm* the court overruled an earlier line of cases that predicated the ability of a creditor of the husband to reach community personalty, as distinguished from

---

[1]RCW 26.16.030 "Community property defined—Control of personalty. Property not acquired or owned[,] as prescribed in RCW 26.16.010 and 26.16.020[,] acquired after marriage by either husband or wife or both, is community property. The husband shall have the management and control of community personal property, with a like power of disposition as he has of his separate personal property, except he shall not devise by will more than one-half thereof."

RCW 26.16.040 "Conveyance of community realty—Liens. The husband has the management and control of the community real property, but he shall not sell, convey or encumber, the community real estate, unless the wife join with him in executing the deed or other instrument of conveyance by which the real estate is sold, conveyed or encumbered, and such deed or other instrument of conveyance must be acknowledged by him and his wife: *Provided, however,* That all such community real estate shall be subject to the liens of mechanics and others for labor and materials furnished in erecting structures and improvements thereon as provided by law in other cases, to liens of judgments recovered for community debts, and to sale on execution issued thereon."

community realty, on the basis that the husband's control of the personalty gave the husband an absolute proprietary right in the property.

In commenting on *Stafford*, Professor Harry M. Cross stated in Cross, *Community Property Law in Washington*, 15 La. L. Rev. 640 (1955), that:

> the court held real property owned as community property of the husband and his second wife cannot be reached to satisfy the divorce decree awards, even though it had previously held that garnishment of the husband's salary was permissible. [*Fisch*] This may be a limited throwback to an abandoned distinction [*Schramm*] between the real and personal property rights and powers of the husband, but perhaps the dissenting judge had a better idea when he suggested that the second wife just took an "encumbered" husband.

(Footnote omitted.)

The public policy considerations which made the earnings of a remarried husband available for accrued alimony owed to a former wife appear by the language of both *Fisch* and *Stafford* to be even stronger considerations to be taken into account in making the husband's earnings and accumulations, when he remarries, available for satisfaction of an accrued child support judgment.

■ The wife of appellant was not joined in this case. Failure to join her does not render the judgment invalid. A judgment against a married man is presumed to be a judgment against his marital community and it is unnecessary to join the wife as she is represented by her husband. *LaFramboise v. Schmidt*, 42 Wn.2d 198, 254 P.2d 485 (1953); *Merritt v. Newkirk*, 155 Wash. 517, 285 P. 442 (1930).

A judgment creditor may rely upon this presumption in executing his judgment against community property. This does not mean, however, the wife is denied her day in court. If she was not a party to the original action, she may

attack the judgment and raise any defenses she could have raised in the original action. *Merritt v. Newkirk, supra.*[2]

The judgment as entered by the trial court ran against appellant and the community composed of appellant and his wife without qualification. This judgment is modified by two factors. It is limited to those community assets which are the result of appellant husband's earnings and accumulations. Inasmuch as the specific nature of the community assets are not before us on review, we do not decide at this time whether the judgment should be broader. See *Gardner v. Gardner,* 95 Ariz. 202, 388 P.2d 417 (1964). It is further subject, upon a showing of necessitous circumstances by his present wife, to such adjustment and allocation of the appellant's earnings and accumulations as may appear to the trial court to be just and equitable.

The judgment of the trial court, as herein modified, is affirmed.

HOROWITZ, A. C. J., and WILLIAMS, J., concur.

---

[2]Several early cases suggest the wife is bound by a judgment against her husband although she was not a party to the action. *Leggett v. Ross,* 14 Wash. 41, 44 P. 111 (1896); *Lichty v. Lewis,* 77 F. 111 (9th Cir., 1896); *Johnson v. Richmond Beach Improvement Co.,* 63 F. 493 (C.C.N.D. Wash. 1894). But see *Gustin v. Crockett,* 44 Wash. 536, 87 P. 839 (1906); *Sloane v. Lucas,* 37 Wash. 348, 79 P. 949 (1905); *McNair v. Ingebrigtsen,* 36 Wash. 186, 78 P. 789 (1904); and *Turner v. Bellingham Bay Lumber & Mfg. Co.,* 9 Wash. 484, 37 P. 674 (1894).