[Nos. 2647–2; 2960–2. Division Two. March 22, 1979.]

NORTHERN COMMERCIAL COMPANY, *Appellant,* v. E. J. HERMANN CO., INC., ET AL, *Respondents.*

964

*Jones, Grey & Bayley, Dexter A. Washburn* and *E. Moquin,* for appellant.

*Stritmatter & Stritmatter* and *Lester Stritmatter,* for respondents.

SOULE, J.—This is an appeal from a determination by the trial court that respondent's interest in certain realty was unaffected by the execution sale of that realty, and also from a denial of appellant's petition to bind respondent as a joint debtor to the previously obtained judgment. We affirm.

Earnest and Bernadine Hermann were married on January 17, 1945. In early 1964, Earnest and Bernadine separated and began living apart. Some 10 months after this separation, on December 30, 1964, Earnest, through his wholly–owned corporation, entered into a lease–purchase agreement with appellant, Northern Commercial Company (NC). In connection with this agreement, Earnest executed a guaranty of the payments to be made by the corporation.

On August 9, 1968, Bernadine obtained a decree of divorce in Grays Harbor County. Pursuant to this decree, she was awarded as part of her property settlement the sum of $49,292.86 payable in monthly installments of $500. In order to secure this indebtedness, the trial court imposed a lien on certain property awarded to Earnest Hermann (including that property herein concerned). This lien was decreed to be "a first, prior and paramount lien upon each and every item of said real property, with appurtenances thereon, subject only to existing liens or mortgages thereon,

and any subsequent purchaser, lienor or encumbrancer, shall be subject in interest to the lien of the plaintiff, Bernadine F. Hermann." Earnest made court–ordered monthly payments until about April 1970; and since that time no payments have been made.

On April 14, 1970, NC brought an action against Earnest and the marital community of Earnest and Jane Doe Hermann based upon the guaranty. The corporation had previously defaulted in its payments on the lease arrangement. NC served process upon Earnest and his *second* wife, but did not serve, nor did it attempt to serve, Bernadine with any notice of the action. On October 27, 1970, Earnest confessed judgment on behalf of the corporation, himself and the former marital community of Earnest and Bernadine Hermann as joint debtors. By this time, NC had been made aware of Bernadine's divorce from Earnest and the lack of service upon Bernadine.

In June 1971, NC filed a petition to bind Bernadine as a joint debtor to the confession of judgment pursuant to RCW 4.68.010. After each party had moved for summary judgment and while settlement negotiations with Bernadine, as well as the legal proceedings, were still pending, NC obtained a writ of execution from the Grays Harbor Superior Court. Without giving any personal notice to Bernadine, NC proceeded to have the sheriff of Mason County sell the realty here concerned. Notice of the sale was provided by posting such on the property and by publication in a Mason County legal newspaper as required by RCW 6.24.010. At this time title to the property was still held *as of record* by Earnest and Bernadine Hermann. NC obtained the property by bidding in $20,000 of its judgment at the sale which was held on January 28, 1972. The sale was confirmed by Grays Harbor County Superior Court on April 3, 1972, and a sheriff's deed was issued to NC on July 31, 1973. NC thereafter acquired a prior interest in this land held by another party for $32,000; and on December 28, 1973, sold the property to a third party on a real estate contract for $92,000.

Upon learning of the sale, Bernadine petitioned Grays Harbor County Superior Court in April 1975 to set aside the execution sale insofar as her lien interest was concerned. The court recognized her interest as an equitable lien which was not affected by the sale due to the lack of notice given to her in the original action.

NC also filed an amended summons and complaint to bind Bernadine as a joint debtor to the confession of judgment. The trial court again ruled in favor of Bernadine Hermann. NC takes this appeal from those rulings.

The initial question presented by this appeal is: what manner of interest was granted by the divorce decree to Bernadine Hermann in the land located in Mason County? Respondent does not contend, nor could she,[1] that a statutory lien existed on the property at the time of the sale. Rather, it is her contention that the court's language in the decree imposed an equitable lien upon the property for her benefit.

The power to impose such equitable liens to secure both property settlements and alimony payments has been recognized by many jurisdictions. *Lipka v. Lipka,* 60 Cal. 2d 472, 386 P.2d 671, 35 Cal. Rptr. 71 (1963); *Peterson v. Peterson,* 94 Idaho 187, 484 P.2d 736 (1971); *Leone v. Leone,* 39 Ill. App. 3d 547, 350 N.E.2d 545 (1976); *Kobriger v. Winter,* 263 N.W.2d 892 (Iowa 1978); *Luedecke v. Luedecke,* 195 Iowa 507, 192 N.W. 515 (1923); *Blitzer v. Blitzer,* 361 Mass. 780, 282 N.E.2d 918 (1972); *In re Marriage of Jackson,* 506 S.W.2d 261 (Tex. Civ. App. 1974); *Mea v. Mea,* 464 S.W.2d 201 (Tex. Civ. App. 1971).

The Supreme Court and Court of Appeals of this state, while not specifically designating them as equitable liens, have also imposed such liens for the purpose of securing awards of community property which are to be paid to a spouse in future installments. *DeRuwe v.*

---

[1]Respondent had not filed a copy of the divorce decree in Mason County prior to the sale and thus no statutory lien could have attached to the property. RCW 4.56.200(2).

*DeRuwe,* 72 Wn.2d 404, 433 P.2d 209 (1967); *Bailey v. Bailey,* 142 Wash. 359, 253 P. 121 (1927); *Pollock v. Pollock,* 7 Wn. App. 394, 499 P.2d 231 (1972). Such a lien is separate and distinct from that which may arise as a statutory judgment lien. The equitable lien acts to secure those payments which may become due and owing *in the future,* while a statutory judgment lien will arise only from the date of the decree, and will only act to secure an amount which is fixed by the court as due and owing from the date of the decree. If no fixed amount is due and owing as of the date of the decree, no statutory lien results. (Where such installment payments are decreed, a statutory lien does not arise until a further judgment is entered which determines the amount of the unpaid installments.) *Swanson v. Graham,* 27 Wn.2d 590, 179 P.2d 288 (1947).

Consequently, had not the divorce court imposed such a lien, respondent would have only had judgment as each installment fell due but without any statutory lien to provide security and without any priority over liens obtained prior to her levy of execution, regardless of the fact that the money to be paid to her represented her share of community property. *See Swanson v. Graham, supra.* Without such a lien, the creditors of the husband would be able to obtain property awarded to the husband which had been formerly of a community nature for the satisfaction of the husband's subsequent debts, and thereby effectively deprive the spouse, to whom a monetary award was made, of her interest in the community property. No doubt the divorce court was aware of this possibility when it imposed this equitable lien upon Earnest Hermann's property.[2] The power to impose such a lien arises from the court's inherent authority to make its judgments effective. *Ormachea v. Ormachea,* 67 Nev. 273, 217 P.2d 355 (1950).

---

[2] Equity will create a lien where there is no valid lien at law and it is needed to prevent an injustice. H. McClintock, *Handbook of the Principles of Equity* § 118 (2d ed. 1948). Under some circumstances, an award of property to one spouse with compensating installment payments to the other, but without any lien, may not be "just and equitable" under RCW 26.09.080.

██ ██ Given the existence of an equitable lien, NC claims that it nevertheless had a valid judgment against Bernadine as a result of the confession of judgment by Earnest Hermann, and therefore properly levied execution on her interest in the property as well.[3] The basis for this contention lies in the rule that a judgment is good as against the marital community even though only the husband was served with process since he was formerly deemed to be the manager of the community and to represent the community's interests. *Knittle v. Knittle*, 2 Wn. App. 208, 467 P.2d 200 (1970).[4] This rule has been applied to the situation where, as here, the spouses were divorced at the time the service was made upon the husband and the judgment was thereupon taken against the marital community. *Fitch v. National Bank of Commerce*, 184 Wash. 294, 50 P.2d 910 (1935). However, we believe that such an extension of the above rule is unwarranted and violates current concepts of due process.[5]

The husband had been the manager and agent of the community *during* the marriage, *Gleason v. Metropolitan Mortgage Co.*, 15 Wn. App. 481, 551 P.2d 147 (1976), but at the time NC commenced the original action, Earnest and Bernadine had already been divorced. The question arises:

---

[3]We assume for purposes of this decision that the guaranty was a community obligation.

[4]RCW 26.16.030 and .040, providing that the husband had the management and control of the personal and real property of the community, were amended in 1972 to give management and control to either spouse. Laws of 1972, 1st Ex. Sess., ch. 108, § 3, p. 245.

[5]We recognize that service has recently been upheld in the situation where spouses have separated but are not yet divorced. *Gleason v. Metropolitan Mortgage Co.*, 15 Wn. App. 481, 551 P.2d 147 (1976). However, in that case, the wife had received a summons and complaint and was correctly named therein. Further, she had placed the matter in the hands of her own attorney.

Where the community has been already dissolved, the presumption that the husband will notify the wife and guard her interests is unwarranted, particularly where, as in this case, by confessing a community debt, he may jeopardize her rights under the decree of divorce because of indifference arising from his financial straits.

what effect does a divorce have upon the authority of the husband to confess judgment upon behalf of the former marital community? The Supreme Court of our state has declared that "[t]he entry of the divorce decree dissolve[s] the community, and the [husband] could not continue as manager of an entity that had ceased to exist." *Barkley v. American Sav. Bank & Trust Co.,* 61 Wash. 415, 417, 112 P. 495 (1911). Consequently, after a divorce there is no entity in existence against which the former creditors could proceed, nor could there be an agent upon whom service of process could be made. Hence, the application of the agency principle by the court in *Fitch* to a post–divorce situation was unwarranted.

Furthermore, such a rule would violate the basic principles of due process. Once the marital community has been dissolved, there remain two individuals who may have continuing liabilities arising out of the former community obligations. Thereafter, the creditors on those obligations may proceed against the former spouses either individually or collectively. However, due process requires that *each* interested party in that proceeding be given notice which is reasonably calculated to apprise him/her of the *pendency* of the action. *Thayer v. Edmonds,* 8 Wn. App. 36, 503 P.2d 1110 (1972). It is a fundamental tenet of due process that "[u]ntil adequate notice, actual or constructive, is given, the court has no jurisdiction *to proceed to judgment.*" (Italics ours.) *Staley v. Staley,* 15 Wn. App. 254, 257, 548 P.2d 1097 (1976).

In applying those principles to this case, we find that Bernadine's right to due process of law, in the form of personal notice of the action, was violated by the procedures followed in the original action. Consequently, the judgment entered was void insofar as it purported to bind her. *John Hancock Mut. Life Ins. Co. v. Gooley,* 196 Wash. 357, 83 P.2d 221, 118 A.L.R. 1484 (1938).[6] We wish to reemphasize

---

[6]Even if the underlying judgment were valid, the notice of sale given by posting, only, pursuant to RCW 6.24.010, is constitutionally suspect in a case where

that we are *not* saying that a creditor cannot still satisfy his debt out of that which had formerly been community property, but we are saying that before a creditor may do so, he must obtain a judgment against at least the party whose property interests he wishes to later subject to execution.

In summary, NC merely obtained a judgment against Earnest and was only in a position to execute upon his interest in the realty. In determining what interest NC acquired by the execution sale, the law is well–settled that a judgment creditor who purchases at his own execution sale is not a bona fide purchaser within the protection of the recording statute and merely takes that interest which the debtor had at the time of the sale. *Desimone v. Spence,* 51 Wn.2d 412, 318 P.2d 959 (1957); *Malm v. Griffith,* 109 Wash. 30, 186 P. 647 (1919); *Pacific Nat'l Bank v. Richmond,* 12 Wn. App. 592, 530 P.2d 718 (1975).

At the time of the execution sale, Earnest Hermann owned the property subject to the equitable interest of respondent. NC, by purchasing the property, stands in the shoes of its debtor and thus took the property subject to the equitable lien of respondent. *Desimone v. Spence, supra; Monegan v. Pacific Nat'l Bank,* 16 Wn. App. 280, 556 P.2d 226 (1976); *Pacific Nat'l Bank v. Richmond, supra.*

NC also contends that once the sale was confirmed, respondent could no longer challenge the sale of the property. It is true that a confirmation of the sale is a conclusive determination of the regularity of the sale proceedings. RCW 6.24.100(4). However, the order of confirmation merely acts to confirm the sale of the debtor's interest in the property and thus permits the issuance of a sheriff's

---

the creditor knows of the whereabouts of the alleged debtor, has the means of giving notice and is in fact in the process of negotiating satisfaction of the claim. *See Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 94 L. Ed. 865, 70 S. Ct. 652 (1950); *Staley v. Staley,* 15 Wn. App. 254, 258, 548 P.2d 1097 (1976); *Investment Exch. Corp. v. Magnum T., Inc.,* 3 Wn. App. 612, 476 P.2d 731 (1970). *Cf.* RCW 7.33.320 requiring a judgment creditor to give notice by mail or personal service upon issuance of a writ of garnishment.

deed which conveys that interest. *Desimone v. Spence,
supra.* As a result, the deed obtained by NC under these
facts only conveyed that interest which Earnest had in the
property. To the extent the confirmation decree purported
to convey any interest which Bernadine had in the prop-
erty, it was void since no valid judgment had been obtained·
against her which would have permitted NC to execute
upon her equitable interest as well.

 NC finally asserts that respondent was not timely in
her motion to vacate the sale and confirmation.[7] An order
of confirmation is a final judgment, *In re Hardison,* 28
Wn.2d 921, 184 P.2d 840 (1947), and as such, any motion to
vacate is governed by CR 60. That rule allows a party a
reasonable time in which to make a motion to vacate a
judgment upon the basis that the original judgment was
void. The 1–year limitation is not applicable to a void
judgment and the trial court is vested with considerable
discretion in determining whether such a motion is timely.
*Columbia Valley Credit Exch., Inc. v. Lampson,* 12 Wn.
App. 952, 533 P.2d 152 (1975). Under the facts of this case,
NC has not met its burden of proving a clear or manifest
abuse of discretion in this regard.

NC also appeals from a denial of its petition to bind
Bernadine as a joint debtor to the previously entered judg-
ment pursuant to RCW 4.28.190 (superseded by CR 20(d)
and RCW 4.68.010).

 NC asserts that by obtaining an order binding Ber-
nadine to the prior judgment, it would somehow validate
the prior execution sale insofar as her interests in that
realty were concerned. Even assuming that the joint debtor
provisions are applicable to this situation, NC mistakes the
purpose of those provisions. The subsequent binding of a

---

[7]NC also contended that the trial court lacked jurisdictional authority to
grant Bernadine's petition to set aside the sale, on the basis of the venue require-
ments of RCW 4.12.010 and .020(2). Bernadine's motion was to vacate a judgment
and did not commence a new action. The venue was proper for such a motion. *See
In re Higdon,* 30 Wn.2d 546, 192 P.2d 744 (1948); *Rowe v. Silbaugh,* 96 Wash. 138,
164 P. 923 (1917).

joint debtor is for the purpose of permitting the creditor to *thereafter* proceed against the separate property of the previously unserved debtor. (According to NC's theory, the separate property would mean that property of Bernadine's which formerly had been of a community nature.) The joint debtor provisions cannot be used to validate a prior seizure of the unserved joint debtor's separate property.

It is also important to note that in any event the joint debtor provisions are not available to a creditor who could have obtained service of process upon the unserved joint debtor. The purpose of those provisions was to alleviate the harshness of the common–law rule. At common law, a creditor could not take a judgment against those joint debtors served without releasing those not served. Consequently, the joint debtor statute was enacted to permit a creditor who *could not* obtain service of process upon all of the joint debtors to take judgment against those served without releasing those whom he was unable to serve. *Warren v. Rickles,* 129 Wash. 443, 225 P. 422 (1924). *See also Almand v. Hathcock,* 140 Ga. 26, 78 S.E. 345 (1913). The record clearly reflects that Bernadine was not served with process and there has been no showing that NC was unable to serve Bernadine with process, at a time when she was still living in the same town as her former husband who was so served. As a matter of fact the record strongly suggests that she could have been served.

In conclusion, we wish to note we merely uphold the trial court's determination that the execution sale did not affect the lien interest which Bernadine had in the realty. We make no comment as to whether the equitable lien is still enforceable as that is the subject matter of a pending proceeding.

The trial court is affirmed.

JOHNSON, J. Pro Tem., concurs.

REED, A.C.J. (concurring)—I concur in the result reached by the majority. However, I have serious reservations about

the utility of the rather lengthy discourse on "equitable liens." In particular, I believe the specific security interest in real property which was awarded to Mrs. Hermann in the divorce decree is not an equitable lien and should not be confused with such liens, which are sui generis in this state. *See Farrow v. Ostrom,* 16 Wn.2d 547, 133 P.2d 974 (1943); *Nelson v. Nelson Neal Lumber Co.,* 171 Wash. 55, 17 P.2d 626 (1932); 4 S. Symons, *A Treatise on Equity Jurisprudence* §§ 1233, 1235 (5th ed. 1941); 51 Am. Jur. 2d *Liens* § 66 (1970).

A recognition of the true nature of equitable liens renders unnecessary the effort to distinguish Mrs. Hermann's security interest from the common judgment lien. All we need determine here is that Mrs. Hermann retains *some* interest in the former community real estate after the decree. It matters not to the community creditors what that interest is, because nothing husband and wife can do or the divorce decree does for them, can derogate against the creditor's right to subject former community property to satisfaction of his valid claims. *Farrow v. Ostrom, supra. See also* Cross, *The Community Property Law in Washington,* 49 Wash. L. Rev. 729, 841 (1974).

So long as the creditor affords the former spouses procedural due process, both in obtaining judgment against the former marital community and in executing upon the former community property, neither spouse may complain. In this sense the mechanics differ little, if at all, from any proceeding in rem or quasi in rem.

I should also like to point out that much of the confusion in this case arises because of the failure of Mrs. Hermann to take steps to enjoin a sale of the Mason County property until the character of the debt underlying the judgment had been judicially determined. This she could have done as soon as she was apprised of the judgment by NC which purported to join her as a joint debtor. My observation in this regard is probably academic, however, because the trial court exercised its discretion in permitting her to attack the validity of the judgment. In any event, her petition to

vacate was denied, the relief granted being only that her interest had not passed under the sale.

In addition, I feel somewhat uncomfortable about the use of language by the majority which might lead one to conclude that a community creditor can somehow proceed against the noncontracting spouse individually and obtain a personal judgment. I am sure this is not what was intended; however, the problem is compounded by NC's misguided attempts to utilize the provisions of RCW 4.68.010 and CR 20(d) to bind Bernadine as a "joint debtor." Clearly, if NC's debt was contracted by Mr. Hermann for himself and for the marital community, his actions without more could not make Bernadine separately liable; thus she could not be a "debtor" in any sense of the word. As noted above, she would simply have an interest in former community property which would be subject to sale to satisfy the former community creditors if due process were followed.

Except for these observations, I concur in the majority's resolution of the principal issue addressed, i.e., whether Mrs. Hermann had an interest in the Mason County property which was not validly sold because she was not afforded due process.