[No. 3283-2. Division Two. June 25, 1979.]

HAROLD LESLIE KOMM, *Respondent,* v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Appellant.*

594

*Walter E. White, Cornelius Schile,* and *Philip G. Hubbard,* for appellant.

*Douglas B. Leightner, Jr.,* and *Levy Johnston,* for respondent.

PETRIE, J.—The Department of Social and Health Services, Office of Support Enforcement (DSHS) appeals from the trial court's order prohibiting it from garnisheeing the salary of petitioner, Harold Komm. We reverse.

In 1973, Harold married Sandra Maulding (Komm), the natural mother of two minor sons from a previous marriage. In June 1975, the boys were placed in foster care; they have been provided foster care by DSHS since that time.

In 1976, DSHS initiated administrative proceedings pursuant to RCW 74.20A.055 to compel contribution to the support of these children. Sandra was the sole party named and served with notice of those proceedings. Neither

Harold nor the community composed of Harold and Sandra was named as a party to the action. The administrative decision found Sandra to be responsible for the support of the boys and established a repayment schedule. In May 1977, the decision was affirmed on appeal to the Superior Court for Clark County. There has been no appeal from that order.

In July 1977, Harold's employer was served with an "Order to Withhold and Deliver"—a form of garnishment authorized by RCW 74.20A.080—and the employer complied with that order.[1] In November 1977, Harold instituted this separate action seeking a writ of prohibition restraining DSHS from garnisheeing his salary and asking for restitution of moneys obtained prior to the date he filed the writ. The trial court concluded that the community of Harold and Sandra "may very well be liable to contribute to the support" of Sandra's children but, nevertheless, concluded that because Harold had "never been named, served or afforded an opportunity to be heard," procedural due process had been violated and Harold's wages could not, therefore, be garnisheed by DSHS. Accordingly, the court granted Harold's writ and ordered DSHS to return all money previously obtained through garnishment. DSHS appeals to this court.

This case presents two issues. The first, presented by Harold Komm in his respondent's brief, challenges the trial court's conclusion that the Komm marital community "may very well be liable" for the debt owed to DSHS for foster—care expenses of Sandra's children.[2] The second issue, raised by DSHS, questions the trial court's conclusion that this community debt could not be satisfied out of Harold's

---

[1]The order directed the employer to withhold only 25 percent of Harold's net earnings.

[2]We review this issue not only because the trial court's determination is inconclusive, but also pursuant to RAP 2.4(a), which provides the appellate court may, at the request of respondent, examine "those acts in the proceeding below which if repeated on remand would constitute error prejudicial to respondent."

wages because neither Harold nor the community had been made a party in the original action. We will address these contentions in order.

■ As a general matter, a stepparent is responsible for the support of his (or her) stepchildren during the time that he is married to the children's natural parent. Indeed, RCW 26.16.205 as amended in 1969, authorizes the stepparent's *separate* property, as well as the assets of the marital community to be charged with the support of the stepchildren.[3] Although the statute is striking in that it purports to provide for the separate liability of the stepparent, Washington courts have consistently held that assets of the marital community consisting of a natural and a stepparent cannot be insulated from the natural parent's duty to support his children. *Lane v. Lane,* 4 Wn. App. 632, 483 P.2d 644 (1971); *Hinson v. Hinson,* 1 Wn. App. 348, 461 P.2d 560 (1969); *see also Fisch v. Marler,* 1 Wn.2d 698, 97 P.2d 147 (1939) (new marital community is responsible for alimony owed to husband's former wife).

After considering the above–stated rules, we find that the true question presented by this case can be stated as follows: Did the legislature, in enacting the recoupment provisions of RCW 74.20A, intend to make the support debt created by RCW 74.20A.030 the sole and separate responsibility of the natural parent, or is such a statutory debt akin to a debt for child support and therefore chargeable against the assets of the marital community consisting of the natural parent and his or her new spouse?

The difficulty in answering this question results from an apparent inconsistency among the various provisions of RCW 74.20A. Many of the provisions of this chapter speak

---

[3]RCW 26.16.205 reads:

"The expenses of the family and the education of the children, *including stepchildren,* are chargeable upon the property of both husband and wife, or either of them, and in relation thereto they may be sued jointly or separately: *Provided,* That with regard to stepchildren, the obligation shall cease upon the termination of the relationship of husband and wife." (Italics ours.)

in terms of the liability of the "responsible parent." RCW 74.20A.020 provides:

> *Unless a different meaning is plainly required by the context,* the following words and phrases as hereinafter used in this chapter shall have the following meanings:
>
> . . .
>
> (5) "Responsible parent" means the *natural or adoptive parent* of a dependent child.

(Italics ours.)

RCW 74.20A.030, however, specifically provides that

> any payment of public assistance money made to or for the benefit of any dependent child or children *creates a debt* due and owing to the department by the natural or adoptive parent *or parents who are responsible for support of such children* . . .

(Italics ours.)

Furthermore, RCW 74.20A.055, the specific procedure used in this case, authorizes DSHS to initiate the reimbursement proceedings by conducting a show cause hearing after serving "on the responsible parent a notice and finding of financial responsibility . . ." The statute directs:

> This notice and finding shall relate to the support debt accrued and/or accruing under this chapter and/or *RCW 26.16.205,* including periodic payments to be made in the future for such period of time as the child or children of said responsible parent are in need.

(Italics ours.) Further, the same statute directs:

> The hearing examiner shall determine the liability and responsibility, if any, of the alleged *responsible parent* under RCW 74.20A.030, and shall also determine the amount of periodic payments to be made to satisfy past, present or future liability under RCW 74.20A.030 and/or *26.16.205.*

(Italics ours.)

From these several statutes, we glean a legislative intent that stepparents whose liability for support of minor children flows from RCW 26.16.205 are subject to the statutory support debt created by RCW 74.20A.030. A strict application of the statutory term "responsible parent"

(limiting it only to a natural or adoptive parent for debt recoupment purposes) would be inconsistent with the legislatively declared purpose of RCW 74.20A as expressed in the first section of RCW 74.20A.010:

It is declared to be the public policy of this state that this chapter be construed and administered to the end that children shall be maintained from the resources of responsible parents, thereby relieving, at least in part, the burden presently borne by the general citizenry through welfare programs.

Harold also maintains that even if an RCW 74.20A obligation is treated as a community obligation for child support, such debt can only be collected out of the *earnings* of the *natural* parent. Superficially, the modification of a trial court judgment as found in *Knittle v. Knittle,* 2 Wn. App. 208, 467 P.2d 200 (1970) appears to support Harold's contention. Other Washington cases have not restricted the right of support to earnings of the "encumbered" spouse. *Smith v. Smith,* 13 Wn. App. 381, 534 P.2d 1033 (1975); *Hinson v. Hinson, supra.* We find no reason to limit a child's right to support (or the state's subrogation rights) in the manner suggested by the *Knittle* court. As stated by Professor Cross in his analysis of this problem:

The fundamental idea of community property law is that the acquisitions during marriage result from the spouses working in their respective spheres. Hence, the husband's wages, though received from external sources, are in part "earned" by the wife maintaining the home. *Ergo,* there should be no necessary limitation on the enforceability of this antenuptial obligation only to wages or other income acquired by the "encumbered" spouse.[4]

H. Cross, *The Community Property Law in Washington,* 49 Wash. L. Rev. 729, 831 (1974).

Having determined that an RCW 74.20A debt is chargeable against the marital community composed of a natural parent and his or her new spouse, we are now ready to

---

[4] In the case at bench it would be inappropriate to refer to the statutory support debt created by RCW 74.20A.030 as an antenuptial obligation; it is truly postnuptial.

address the DSHS's contention that the trial court erred in ruling that due process requires both partners to a marriage be served in order to "create" a judgment which may be satisfied out of community assets.

In the past, a judgment entered solely against a husband was presumed to be good against the marital community even though the husband was the only spouse served with process and named in the judgment. *Northern Commercial Co. v. Hermann Co.*, 22 Wn. App. 963, 593 P.2d 1332 (1979); *LaFramboise v. Schmidt*, 42 Wn.2d 198, 254 P.2d 485 (1953); *Merritt v. Newkirk*, 155 Wash. 517, 285 P. 442 (1930). This rule presented no due process problems because the husband, as manager of the community, was deemed to represent the community's interest. *Fies v. Storey*, 37 Wn.2d 105, 221 P.2d 1031 (1950); *Capital Nat'l Bank v. Johns*, 170 Wash. 250, 16 P.2d 452 (1932). In fact, as the *statutory agent of the marital community,* the husband had not only the right, but the *duty,* to defend actions against the marital community. *Gleason v. Metropolitan Mortgage Co.,* 15 Wn. App. 481, 551 P.2d 147 (1976). *See generally* W. De Funiak, *Principles of Community Property* § 124 (2d ed. 1971). Of course, the judgment was conclusive only against the husband's separate property. *Proctor v. Forsythe,* 4 Wn. App. 238, 480 P.2d 511 (1971). The unnamed wife, if she so chose, could wait and intervene at the time of execution to challenge the judgment and prove that the obligation was not a community debt. *Merritt v. Newkirk, supra; Knittle v. Knittle, supra.*

■ Since the revision of the community property laws in 1972, however, either spouse may effectively manage the community. RCW 26.16.030. We, therefore, find that a judgment entered against Sandra only, but which arose out of the community's child support obligation, was properly enforceable against Harold's salary—an asset of their marital community.

In his brief, Harold appears to categorize the garnishment of his wages as a "prejudgment seizure of a defendant's property without notice or hearing" and cites the

*Sniadach–Fuentes* line of cases which hold that such practice violates due process. *Sniadach v. Family Fin. Corp.,* 395 U.S. 337, 23 L. Ed. 2d 349, 89 S. Ct. 1820 (1969); *Fuentes v. Shevin,* 407 U.S. 67, 32 L. Ed. 2d 556, 92 S. Ct. 1983 (1972); *Olympic Forest Prods., Inc. v. Chaussee Corp.,* 82 Wn.2d 418, 511 P.2d 1002 (1973). The simple but complete response to that contention is that the garnishment of Harold's wages was not a "prejudgment seizure"; it was a post–judgment seizure following service upon the community's statutory agent, Sandra.

██ His contention confuses the concept of a judgment being declared "conclusively" (as opposed to "presumptively") against a community, with the concept of the due process right not to have property attached or garnisheed *absent notice and a prior hearing.* Harold's apparent belief that only Sandra's separate property could be reached to satisfy the statutory support debt did not deprive the community from asserting any and all defenses to DSHS's claim at the fair hearing at which the community was legally present.[5]

In summary, we hold that the RCW 74.20A debt is an obligation of the marital community of Sandra and Harold Komm and that no due process problems were created by garnisheeing Harold's wages based on a judgment which named only Sandra. The trial court's decision to grant Harold's petition for a writ of prohibition was improper and is hereby reversed.

PEARSON, C.J., and REED, J., concur.

---

[5]We are aware that WAC 388–11–065(7) makes lack of natural or adoptive parentage an affirmative defense in a proceeding to establish parental responsibility pursuant to RCW 74.20A.055. Although an agency interpretation of a statute is entitled to deference, "the court is the final authority on statutory construction and it need not approve regulations or decisions inconsistent with a statute or the policy underlying the statute." *Moses v. Department of Social & Health Servs.,* 90 Wn.2d 271, 274, 581 P.2d 152 (1978). In addition, we note that another administrative regulation propounded pursuant to RCW 74.20A appears to make stepparents *responsible* for the support of their stepchildren. WAC 388–14–020(3)(b).