(No. 4991. September 22, 1928.)

PEDRO GANDIAGO, Respondent, v. M. E. FINCH, as Sheriff of Twin Falls County, Idaho, and FIRST NATIONAL BANK OF MOUNTAIN HOME, IDAHO, a Corporation, Appellants.

[270 Pac. 621.]

E. M. Wolfe and A. H. Nielson, for Appellants.

Karl Paine and Edwin Snow, for Respondent.

VARIAN, Commissioner.—Respondent, plaintiff in the trial court, brought this action to restrain the defendant sheriff of Twin Falls county from selling under execution certain sheep, pack animals and camp equipment levied upon as the property of Francisco Gandiago, and the defendant bank from directing or commanding said sale.

In 1916, Joe Bengoechea and Francisco Gandiago were copartners under the firm name of Francisco Gandiago & Company, and owned and operated certain sheep ranging in Twin Falls and Owyhee counties. Bengoechea owned a three-fourths interest in the partnership, and a one-fourth interest belonged to Gandiago, who was the active manager of the business. Bengoechea, who was also engaged in other

business ventures, mortgaged his three-fourths interest in the property of Francisco Gandiago & Company to The First National Bank of Idaho, at Boise, to secure the payment of his individual debt of $20,000 and interest. Subsequently, in 1921, being in need of funds to carry on the partnership business, Francisco Gandiago & Company mortgaged the entire partnership property to The First National Bank of Idaho to secure payment of a note for $25,000. Of this sum, $20,000 was used to pay off the mortgage, securing that amount upon said three-fourths interest of Bengoechea, whose mortgage was then released.

On December 24, 1921, the indebtedness of Francisco Gandiago & Company to The First National Bank of Idaho, had increased to $30,760. On that date, a new note for said amount, payable on demand to The First National Bank of Idaho, was executed by Francisco Gandiago, acting for the copartnership, who, on the same date, executed a new chattel mortgage upon all its property to Crawford Moore, trustee, to secure payment thereof, further advancements and renewals.

Joe Bengoechea died about the time of the execution of the last note and chattel mortgage, and all subsequent transactions between the bank and its debtors were with Francisco Gandiago, the sole surviving partner.

In addition to the secured indebtedness owing The First National Bank of Idaho, in December, 1921, Francisco Gandiago & Company owed large sums to unsecured creditors,—$8,000 to the Commercial Savings Bank of Mountain Home, $4,000 to the Boise City National Bank, with accrued interest, all evidenced by promissory notes, and about $12,000 for labor due to camptenders and herders. To plaintiff, Pedro Gandiago, was owing the largest sum for labor, being in excess of $6,000, representing his wages as sheepherder for more than five years.

Shortly after the execution of the chattel mortgage on December 24, 1921, Crawford Moore, trustee, and president of The First National Bank of Idaho, notified Francisco Gandiago that the status of the partnership loan was un-

satisfactory to the bank, that property not covered by the chattel mortgage was open to attachment (i. e., hay and other property to purchase which funds were advanced by the bank, as well as money advanced by the bank to meet checks issued in operating the partnership business) ; and informed him that the bank would foreclose the mortgage.

Before commencing foreclosure proceedings, Crawford Moore notified representatives of the Boise City National Bank and the Commercial Savings Bank of Mountain Home of the intention to foreclose, telling them the amount of the indebtedness due The First National Bank of Idaho from Francisco Gandiago & Company, and asked each if his bank was interested in taking up said indebtedness in order to protect their unsecured claims against the partnership.

Proceeding under the statute, C. S., sec. 6380, authorizing summary foreclosure of chattel mortgages by notice and sale, on January 28, 1922, Crawford Moore executed the required affidavit, stating "the date of the mortgage, the names of the parties thereto, a full description of the property mortgaged, and the amount due thereon," which was stated to be $31,239.50, principal and interest. A copy of this affidavit and a notice of foreclosure and sale, as required by the provisions of C. S., sec. 6381, were duly served upon Francisco Gandiago, one of the partners, then in possession of the mortgaged property, in Twin Falls county, on January 30, 1922, by one H. M. Coon, an employee of The First National Bank of Idaho. On demand, the property was peaceably turned over to Mr. Coon, who thereupon placed the plaintiff, Pedro Gandiago, in charge thereof, posted the notices of sale as required by C. S., sec. 6382, and on February 4, 1922, sold the entire outfit and sheep to Crawford Moore, trustee, for The First National Bank of Idaho, for the amount of its claim, to wit: $31,239.50, that being the only bid offered. Mr. Coon then took Francisco and Pedro Gandiago to Boise with him and a deal for the purchase of the sheep and outfit by Pedro Gandiago from the trustee for the bank was consummated. Pedro had no available cash, and The First National Bank of

Idaho advanced him the amount of the purchase price of the sheep, $31,239.50, and $2,000 additional to run them on, taking a mortgage from him for the aggregate amount of his notes, upon the entire outfit. Pedro was experienced in herding and handling sheep but spoke the English language imperfectly. The bank required that he employ his brother, Francisco, who understood and spoke English well, to assist in handling the outfit, as a condition of the sale being made to Pedro.

Shortly before the foreclosure sale, The First National Bank of Idaho received $7,200 from the sale of the 1921 wool clip. This amount was credited to the partnership account, and checked out in payment of partnership labor claims, except the claim of Pedro Gandiago, which was not paid. About December 3, 1924, Pedro Gandiago paid The First National Bank of Idaho in full for the purchase price of the sheep and outfit purchased by him as aforesaid. About the same time appellant, The First National Bank of Mountain Home, having acquired the said notes of Francisco Gandiago & Company to the Commercial Savings Bank of Mountain Home and the Boise City National Bank, brought an action against Francisco Gandiago to recover upon said notes. Pedro Gandiago was garnished under a writ of attachment issued in said action. Written interrogatories were served in the form prescribed by C. S., sec. 6780, with additional inquiries as to what property the garnishee had in his possession belonging to defendant Francisco Gandiago. Pedro answered that he had no property of Francisco Gandiago in his possession or under his control, and that he owed him no money. The garnishee's answer was not controverted by plaintiff in the attachment suit, and on May 4, 1925, judgment was entered in said action discharging Pedro Gandiago as garnishee.

On March 6, 1925, appellant bank recovered judgment against Francisco Gandiago in the sum of $22,397.06, and on April 17th of the same year the defendant sheriff made the levy that occasioned the bringing of the present action on May 4, 1925.

Appellant bank, in its answer and cross-complaint, alleges fraud in the foreclosure sale to respondent; that said sale was made without consideration, and for the purpose of hindering, delaying, and defrauding the creditors of Francisco Gandiago; that long prior to the sale, and ever since, Francisco Gandiago had been in possession and control of said sheep exercising full ownership of the same, and claiming said ownership; that the Gandiagos and Crawford Moore conspired together for the purpose of hindering, delaying and defrauding creditors of Francisco Gandiago, etc.; that possession of said sheep was not delivered to Pedro Gandiago, and that no change of possession was ever had; and that there is no record in Twin Falls county of any proceedings had for the foreclosure of said chattel mortgage to Crawford Moore, trustee. The answer of appellant sheriff denies the value of the sheep seized, and that respondent is the owner thereof.

In answer to defendant bank's cross-complaint, plaintiff alleges the attachment proceedings, service of notice of garnishment, etc., and plaintiff's answers to the interrogatories therein contained; that his answers thereto were not controverted by defendant bank; and that plaintiff was, in such proceeding, adjudged the owner of the property seized, and that Francisco Gandiago was not the owner thereof.

The case was tried to the court, with a jury sitting in an advisory capacity, to whom were submitted nine interrogatories, fully covering all the issues raised by the pleadings, and which were all answered by the jury against defendant's contentions. The trial judge adopted the findings of the jury that the sale of sheep was followed by immediate possession thereof to Pedro Gandiago; that said sale was followed by an actual continued change of possession; that the sale under the foreclosure proceedings was not made for the purpose of hindering, delaying and defrauding creditors of Francisco Gandiago & Company; that Pedro Gandiago was the owner of the sheep seized by the sheriff under the writ of execution; that Pedro Gandiago is the owner of certain sheep (describing them) in Owyhee

county claimed by him; that Coon took possession of the sheep at the time he served notice of foreclosure; that Crawford Moore sold the sheep to Pedro Gandiago; and that, at the time of the foreclosure sale, the market value of the property sold was $35,213.90. The court further found, among other things, that the sale to Crawford Moore, trustee, under foreclosure proceedings, was not without consideration; that Francisco Gandiago was not exercising any ownership in, or claiming to be the owner of, the property; that Francisco Gandiago was or is not the sole party in interest of Francisco Gandiago & Company, nor did he own any other or greater interest than one-third interest therein; that Pedro Gandiago was experienced in the management of sheep, and was not without credit; that the two Gandiagos and Crawford Moore did not conspire together for the purpose of hindering, delaying or defrauding creditors of Francisco Gandiago; and that plaintiff's claim is not illegal or fraudulent or subject to the right of defendant bank. The court further found in favor of plaintiff as to the service of the garnishment proceedings and entry of judgment thereon, and that the property levied upon in this case is the identical property referred to in the written interrogatories.

As a conclusion of law, the court found that "defendant sheriff is precluded, disbarred, and estopped from selling said property, or any part thereof, and the defendant bank from commanding or directing the sale of said property as the property of said Francisco Gandiago by the said judgment of May 4, 1925, discharging plaintiff as garnishee." Judgment was entered for plaintiff enjoining the sale by the sheriff, for costs, etc.

The first six assignments of error attack the findings of the trial court as not being sustained by the evidence. The seventh attacks the conclusions of law, and the eighth and ninth are to the effect that the court erred in failing to find the foreclosure was had for the purpose of hindering, delaying, or defrauding the creditors of Francisco Gandiago, and that a conspiracy existed to defraud creditors as alleged.

There is substantial evidence to support the findings of fact complained of, and they will not be disturbed on appeal. (*Hinckley v. Perkins, ante*, p. 574, 269 Pac. 101; *Gould v. Hill*, 43 Ida. 93, 251 Pac. 167; *Consolidated Interstate-Callahan M. Co. v. Morton*, 32 Ida. 671, 187 Pac. 791; *Miller v. Blunck*, 24 Ida. 234, 133 Pac. 383.) The conclusions of law referred to in assignment of error numbered 7 necessarily follow from the facts so found.

It does not appear that Mr. Coon ever gave to Crawford Moore, trustee, a bill of sale of the property sold at the foreclosure sale, as required by C. S., sec. 6383, or that he transmitted a return upon the affidavit of foreclosure, of all his proceedings thereunder, to the clerk of the district court of Twin Falls county, the county in which said sale was had, as required by the statute (C. S., sec. 6384).

The procedure for summary foreclosure, by notice and sale, of chattel mortgages in this state (C. S., secs. 6380, 6381, 6382), so far as my research discloses, differs from that prescribed by statute in other states. The first section quoted authorizes the mortgagee, or his agent, to demand possession of the mortgaged property from the mortgagor, and, if delivered peaceably, to sell the same upon like notice as if sold by the sheriff under execution. (C. S., sec. 6382; *Tappin v. McCabe*, 27 Ida. 402 (406), 149 Pac. 460.)

"The provisions of law relative to summary foreclosure of chattel mortgages must be strictly followed. If there is a deviation therefrom, and the property is sold by, or through the acts or procurement of the mortgagee, without such compliance with the statutes, he cannot thereafter maintain any action to collect the deficiency." (*First National Bank v. Poling*, 42 Ida. 636, 248 Pac. 19.)

The mortgagee, his agent or attorney, may purchase the property at the foreclosure sale. (C. S., sec. 6383.)

All of the proceedings up to and including the sale were regular and in strict compliance with the provisions of the sections of the statute quoted. Crawford Moore, trustee, as purchaser at such sale, took all the interest which the mortgagors, Francisco Gandiago & Company, had in the

mortgaged sheep and outfit at the time of the execution of the mortgage. (C. S., sec. 6383.)

In construing judicial sales, the courts have held that a bill of sale is not essential to the validity of a sale of personal property on execution. The general rule is that title vests in the purchaser by virtue of the levy and sale. (23 C. J. 730.)

"The office of the return is to inform the court and the parties of what has been done, and to make the recitals contained in the return of record." (23 C. J. 791.)

And the general rule is that the failure of the officer to make a return of the writ will not invalidate the title of the purchaser at the sale. (23 C. J. 791; 10 R. C. L. 1318; 3 Freeman on Executions, 3d ed., sec. 341.)

It would seem that the language of the supreme court of California in an early case, where the effect of the failure of the sheriff to make any return was under consideration, is peculiarly applicable to the situation here.

"While it is undoubtedly the duty of the sheriff to make this return, and while it is important as evidence of a permanent and authentic character that he should do so, the title of the purchaser does not depend upon the performance of this duty." (*Cloud v. El Dorado County,* 12 Cal. 128, 73 Am. Dec. 526.)

While it was the duty of the person conducting the foreclosure sale to issue a bill of sale to the purchaser, and to transmit a return of his proceedings on the affidavit of foreclosure to the clerk of the district court of the county in which the sale was had, the failure to do both, or either, does not invalidate the purchaser's title to the property sold. The purchaser's title depends upon the validity of the proceedings had prior to and including the sale, and not upon what should be thereafter done by the person making the sale.

I recommend that the judgment be affirmed, with costs to respondent.

The foregoing is approved as the opinion of the court and the judgment is affirmed. Costs to respondent.

Wm. E. Lee, C. J., and Budge, Givens and Taylor, JJ., concur.