Argued December 9, 1977, reversed February 14, 1978

# UNITED STATES NATIONAL BANK OF OREGON, *Respondent,*
## *v.*
# COLEGIO CESAR CHAVEZ, *Appellant.*
## (No. 85 224, SC 25515)
### 574 P2d 647

Don S. Willner, of Willner, Bennett, Riggs & Skarstad, Portland, argued the cause and filed briefs for appellant.

William M. McAllister, Portland, argued the cause for respondent United States of America. With him on the brief were Richard C. Josephson, and Davies, Biggs, Strayer, Stoel and Boley, Portland.

Before Holman, Presiding Justice, and Tongue, Howell, Bryson, Lent and Linde, Justices, and Gillette, Justice pro tempore.

HOWELL, J.

**HOWELL, J.**

The issues in this suit originated in 1966 when Mt. Angel College and the Benedictine Sisters of Mt. Angel became co-obligors on bonds secured by an indenture covering certain real property. The bonds were purchased by the United States of America (United States) through the Secretary of Housing and Urban Development (HUD) with the plaintiff, United States National Bank of Oregon (Bank), as trustee for the bondholders. In 1973 the name of Mt. Angel College was changed to Colegio Cesar Chavez (Colegio) and Colegio became the owner of the college. In June, 1974, the Bank, as trustee, filed a suit to foreclose against Colegio and the Benedictine Sisters. Subsequently, the Sisters were dismissed on stipulation of the parties. Settlement negotiations were conducted unsuccessfully, and the foreclosure suit remained open. A decree of foreclosure was entered in May, 1975, and the Bank purchased the property. The foreclosure sale was confirmed in August, 1975. In September, 1976, plaintiff Bank conveyed the real property to the United States by and through the Secretary of HUD.

In May, 1975, prior to the completion of the foreclosure proceedings and the termination of the redemption period, HUD agreed that Cólegio could stay in possession during the equity of redemption year. Colegio did so, and there was evidence that Colegio spent almost $35,000 in improvements and maintenance since the foreclosure sale. In December, 1975, Colegio and HUD negotiated unsuccessfully for a lease. In August, 1976, at the conclusion of the equity of redemption, HUD wrote Colegio requesting that it vacate the property prior to the start of the 1976 fall semester. However, in October, 1976, the Assistant Secretary of HUD informed Colegio by a letter to Congressman Ullman that it would be "permitted to

continue in occupancy during the period of advertising and sale of the property."[1]

There was evidence that an official of HUD later agreed to let Colegio stay on the premises through the spring term of 1977. In March, 1977, HUD attempted to sell the property but no responsive bids were received. In October, 1977, although it was not a party to the foreclosure proceedings, the United States, by and through the Secretary of HUD, moved for a writ of assistance to secure possession of the property. Some brief testimony was taken, affidavits were filed, and the court allowed the writ of assistance. Colegio appeals, attacking the validity of the writ of assistance.[2]

Colegio contends that the motion for a writ of assistance should have been denied because it is not an appropriate remedy where there is a real issue as to the legal relationship of the parties. Further, Colegio claims that it has raised an arguable issue as to the

---

[1]The letter reads as follows:

"Secretary Hills has asked me to reply to your letter of September 22, 1976, on behalf of Colegio Cesar Chavez, Mt. Angel, Oregon.

"I am informed that the Portland HUD Area Office is in the process of developing a program for disposition of the property by local sales offering. I recognize the Colegio's accomplishments since I have been personally involved in and am acquainted with their progress. In reconsidering the circumstances which confront the Colegio, it will be permitted to continue in occupancy during the period of advertising and sale of the property. Hopefully, this arrangement will afford the Colegio the opportunity to submit a bid for the purchase of the property.

"I am pleased to be able to furnish you this information."

[2]Colegio's first attack on the validity of the writ of assistance is that the United States, as the true owner of the property, should have been made a party to the motion for the writ, and that the trial court's failure to join the United States as a party until the conclusion of the hearing on the writ denied Colegio the right to remove this suit to federal court. HUD was not a party to the original suit but is a party on this appeal; however, the record does not disclose how HUD was made a party. We need not decide how this affects any right of Colegio to remove the case to federal court. Our disposition of the other issues in this case makes it unnecessary to decide this issue, and since the Government is now a party, the question can be decided if and when it is raised in another proceeding.

existence of a tenancy between the United States and Colegio.

■■ A writ of assistance is an equitable remedy; the power to order one stems from the equity court's need to be able to enforce its own decrees. *Schenck v. Conover,* 13 NJ Eq 220 (1860). The issuance of such a writ is summary because it is merely an order directing the sheriff to enforce the rights of a party as determined by an already fully adjudicated decree. Thus, a writ of assistance is proper only "where the right of the applicant against whom the writ is sought to be issued is clear, and where the right is doubtful the writ will be refused." *Bunch v. High Springs Bank,* 76 Fla 546, 80 So 319, 321 (1918).

The rule is well stated by the California Supreme Court:

"* * * The writ of assistance is a summary proceeding resorted to under the rules of chancery practice to give effect to the decree, and presupposes that the rights of the parties are only such as follow upon the decree and the sale had pursuant thereto. *If, however, it appear that those rights have been changed by reason of an agreement, or alleged agreement, subsequently entered into, so that the issuance of the writ would or might work injustice, it should be withheld, and the parties remitted to the ordinary remedies afforded in the Courts." City of San Jose v. Fulton,* 45 Cal 316, 319 (1873).

*See also Allison v. Williams,* 191 Ark 976, 88 SW2d 1001 (1935); *Roach v. Clark,* 150 Ind 93, 48 NE 796 (1897); *Lundstrom v. Branson,* 92 Kan 78, 139 P 1172 (1914); *State v. District Court et al.,* 96 Mont 600, 31 P2d 837 (1934); *Beck v. Kirk,* 69 Mont 592, 223 P 499 (1924); *Escritt v. Michaleson,* 73 Neb 634, 103 NW 300 (1905).

■ Accepting this rule, the issue becomes whether the rights of the parties have arguably been changed by agreement subsequent to the decree of foreclosure. If it is clear that no subsequent agreement altered the status of the parties, then the writ was properly

issued. If there is some doubt as to this point, the writ of assistance was improperly issued.

Colegio contends that a tenancy has been created in the time since the original decree, while the government argues that Colegio was a mere gratuitous licensee of the premises in question. It further contends that if Colegio is only a licensee, the original decree has not been changed by subsequent agreement, and therefore a writ of assistance was proper.

As we stated in *Sproul et al v. Gilbert et al,* 226 Or 392, 403, 359 P2d 543 (1961):

> "To create a leasehold interest the lessee must be granted the right of possession. A license is a revocable privilege to use land in the possession of another."

*See also* Hill and Redman, Law of Landlord and Tenant 11 (1960); Restatement (Second) of Property 9, 10, Landlord and Tenant, § 1.2, comment *a.* Thus, if Colegio was arguably in possession, some type of tenancy could have been created.[3]

We believe the facts in the present case indicate that it is arguable that an agreement, express or implied, to allow Colegio to continue in possession of the land was entered into subsequent to the decree of foreclosure and that the possibility of such an agreement is sufficient to deny the availability of a writ of assistance. The testimony that the United States promised to allow Colegio to stay on the land for

---

[3]Thompson, in his work on real property, notes that:

> "* * * Any permissive occupation of land in subordination of another's title which amounts to an exclusive possession, creates the relation of landlord and tenant between the occupant and the landowner." 3 Thompson, Real Property 85, § 1029 (1959). (Footnote omitted.)

Further, Restatement (Second) of Property 38, § 1.6, illustration 2, says:

> "*L* allows his good friend *T* to occupy rent-free an apartment in *L's* building. Nothing is said of any terms. The arrangement creates a tenancy at will, * * *."

Thus, whether or not consideration has been given for occupancy does not control the question of whether the occupier has possession or mere use.

different periods of time and the letter to Congressman Ullman informing Colegio that it could stay until the property was sold both speak to the possibility that some agreement was made. The fact that Colegio was in actual possession, that it spent substantial sums on repairs, and that it sublet part of the premises all suggest that its possession might have been as a tenant and not as a licensee. Thus, it is not clear whether or not a tenancy was created.

The most significant point here is that the summary nature of the writ of assistance prevents this court and the trial court from effectively determining whether the allegation of a subsequent tenancy is valid or not. If the record shows that it is possible that such an allegation is meritorious, then it is incumbent on the courts to fully hear that claim. A writ of assistance does not provide that opportunity, so we must reverse.

Reversed.