[No. 8853-0-I.   Division One.   April 15, 1982.]

CASA DEL REY, *Respondent,* v. RICHARD S. HART,
ET AL, *Defendants,* R. REID PARMERTER,
*Appellant.*

*Murphy & McGowan, Thomas H. Murphy,* and *Mark S. Elgot,* for appellant.

*Cohen, Andrew & Keegan, P.S.,* and *Michael Cohen,* for respondent.

SWANSON, J.—The Casa del Rey limited partnership (the partnership) through its general partner, A. Richard Gemperle, brought a quiet title action to settle a dispute about title to the Casa del Rey apartment building at 321 Broadway East in Seattle. The trial court granted the partnership's summary judgment motion to quiet title to the apartment building in the partnership while declaring an execution levy and subsequent sheriff's sale of the property invalid. R. Reid Parmerter, who claims an interest in the property as a redemptioner at the sheriff's sale, appealed the granting of the summary judgment, raising issues regarding (1) the procedural and due process regularity of a writ of execution issued pursuant to an affidavit establishing money due on a child support judgment, (2) the enforceability of an antenuptial child support obligation against community real property, and (3) the validity of a redemption by the assignee of a separate antenuptial judgment.

The material facts of this case, though complicated, were undisputed by the parties before the trial court on the motion for summary judgment. The essential focal character of this case is Edward Grubbe whose numerous social and business obligations created the present dispute.[1] In 1963, Grubbe, under the name Edward Charles Grubbe, Jr., was ordered to pay child support to Frances May Calhoun for a child he had fathered out of wedlock. In February 1973, Ms. Calhoun obtained a modification (the Calhoun judgment) of the child support decree to require Grubbe to pay $150 per month retroactive to February 1, 1972, $450 in attorney fees, and $5.80 in costs. In May 1973, a Mr. Lieurance obtained a $2,000 judgment (the Lieurance judgment)

---

[1]Ironically, Grubbe was not a party in this quiet title action.

against Grubbe on an unpaid promissory note. Grubbe satisfied neither of these judgments. At the time both judgments were entered, Grubbe was married to Chloe Grubbe. Grubbe divorced Chloe on October 2, 1975, and married Linda Peters Grubbe the next day.

On March 14, 1977, Grubbe (under the name Elgin N. Grubbe) and his wife Linda purchased a one–half interest in the Casa del Rey Apartments. Ralph and Donna Bullock purchased the other one–half interest. On February 28, 1978, Ms. Calhoun assigned her 1973 judgment to John Flynn. On March 2, Flynn used the assigned judgment to execute against Grubbe's interest in the Casa del Rey for the $14,028 which he calculated Grubbe then owed under the judgment. On March 7, the King County sheriff filed a levy of execution against the Casa del Rey. On March 21, the Grubbes and Bullocks conveyed the Casa del Rey property by statutory warranty deed to the Casa del Rey limited partnership which recorded its purchase on March 24.[2] On April 14, the sheriff sold Grubbe's interest for $14,125.85 (the asserted value of the Calhoun judgment plus costs) to the sole sheriff's sale bidder, John Flynn. On April 29, R. Reid Parmerter became the assignee of the Lieurance judgment. On May 3, Parmerter redeemed Grubbe's interest from Flynn for $14,172.85. On May 5, Parmerter had the sheriff's sale confirmed. On June 13, the Casa del Rey limited partnership tendered $670 to redeem the Calhoun judgment to the extent that it asserted the judgment had been reduced to a sum certain while contending the Lieurance judgment did not create a lien against the Casa del Rey.

In granting summary judgment quieting title in the partnership, the trial court concluded that the writ of execution was not validly issued because the supporting judgment was

---

[2]The Casa del Rey partnership by its escrow agent paid the Bullocks and the Grubbes $82,000 in cash and assumed the $208,000 note. It is an asserted fact not denied that the sellers were paid contrary to the partnership's instruction that all liens should be discharged prior to the disbursement of funds.

not in a sum certain. It also concluded that neither the Calhoun judgment nor the Lieurance judgment became a lien against the Casa del Rey apartment building property because both judgments issued against a different marital community than that of Edward and Linda Grubbe. Finally, it concluded that the partnership had properly redeemed its interest by tendering $670 ($450 plus interest) to the sheriff.

## THE CALHOUN JUDGMENT

The partnership's contention which the trial court accepted is that the Calhoun judgment was not entered as a sum certain judgment beyond the $450 award of attorney fees so that the judgment could only support a levy of execution for $450 plus interest. We disagree.

The Calhoun judgment was a valid judgment entered by a court with jurisdiction over the parties. According to the record before us, Ms. Calhoun also validly assigned this judgment to John Flynn. Although the accrued unpaid child support installments did not become statutory liens against the Casa del Rey property under RCW 4.56.190–.200 because there was no specific court decree creating a lien, *Starkey v. Starkey*, 40 Wn.2d 307, 242 P.2d 1048 (1952), each unpaid installment did become a separate and final judgment as it became due bearing interest from the due date, *Roberts v. Roberts*, 69 Wn.2d 863, 866, 420 P.2d 864 (1966); consequently unpaid support payments will support a writ of garnishment upon affidavit. *Boudwin v. Boudwin*, 159 Wash. 262, 292 P. 1017 (1930). Thus, these child support installments were in a sum certain easily determinable by a simple calculation. There was no need to have another court docket these judgments which were sufficient in themselves to support execution, *Starkey v. Starkey, supra* at 314, writs of garnishment, *Boudwin v. Boudwin, supra,* or writs of attachment. *Swanson v. Graham*, 27 Wn.2d 590, 597, 179 P.2d 288 (1947); *Dunham v. Tabb*, 27 Wn. App. 862, 864, 621 P.2d 179 (1980). A levy of execution will create a lien. *Stafford v.*

*Stafford,* 18 Wn.2d 775, 785, 140 P.2d 545 (1943). Any execution becomes a postjudgment levy.

The respondent partnership claims that the lack of notice to the debtor Grubbe and wife upon the filing of the praecipe and the issuance of the writ of execution is an irregularity of constitutional magnitude. We disagree.

■ While both the United States Constitution and our state constitution prohibit deprivation of property without due process of law, we cannot find that such a violation occurred here. We recognize the holdings in *Sniadach v. Family Fin. Corp.,* 395 U.S. 337, 23 L. Ed. 2d 349, 89 S. Ct. 1820 (1969) (prejudgment wage garnishment), *Fuentes v. Shevin,* 407 U.S. 67, 32 L. Ed. 2d 556, 92 S. Ct. 1983 (1972) (replevin action against consumer goods), and the many cases condemning prejudgment seizure of property without prior notice to the debtor affording him an opportunity for a hearing prior to the granting of summary relief. However, the court in *Fuentes* recognized an unusual set of circumstances might exist which would justify the attachment of property without notice and hearing. *See Thompson v. DeHart,* 84 Wn.2d 931, 530 P.2d 272 (1975); *Seattle Credit Bureau v. Hibbitt,* 7 Wn. App. 219, 499 P.2d 92 (1972); *Lucas v. Stapp,* 6 Wn. App. 971, 497 P.2d 250 (1972). But subsequently in *In re Northwest Homes of Chehalis, Inc.,* 526 F.2d 505 (9th Cir. 1975), *cert. denied,* 425 U.S. 907, 47 L. Ed. 2d 758, 96 S. Ct. 1501 (1976), the court found that an attachment without prior notice under the Washington statute was proper on the basis that the debtor was not deprived of the use and possession of the property, or even of the ability to sell the property. In the instant case, the property was never in the possession of Parmerter or the other defendants. The respondent partnership came into possession by virtue of its purchase from Grubbe and Bullock in March of 1978. It would therefore appear that the debtor was not deprived of use and possession of the property or even of his ability to sell. Further, the significant phrase in the constitution is "No person *shall be deprived* of . . . property, without due process of law." Const. art. 1,

§ 3. Therefore the initial inquiry is whether Grubbe and his wife were deprived of "property" by the writ of execution which triggered the requirements of due process. In *Snia-dach, supra,* the court was concerned with an interim taking without giving the debtor prior notice and an opportunity to be heard. The property with which the court was concerned is the "use" of a garnished portion of his wages. Here the writ of execution issued after the Calhoun judgment was entered. Only the amount of the judgment is subject to dispute. Grubbe has not questioned the amount nor has the respondent partnership raised an issue of fact as to the correctness of the amount claimed due and owing. Further the debtor was not deprived of a significant property interest. He was able to continue in possession of the property. The judgment debtor received notice of the levy and could challenge the validity and amount after that levy.[3] *See Department of Social & Health Servs. v. Gerlack,* 25 Wn. App. 541, 548, 612 P.2d 382 (1980).

Appellant contends, correctly we think, the claimed irregularities should have been raised in opposition to the proposed order confirming regularity of the execution sale. RCW 6.24.100(4) states in part:

> An order confirming a sale shall be a conclusive determination of the regularity of the proceedings concerning such sale as to all persons in any other action, suit or proceeding whatever.

██ An order confirming an execution sale is a final judgment and appealable. *Northern Commercial Co. v. E.J. Hermann Co.,* 22 Wn. App. 963, 593 P.2d 1332 (1979). In *Malo v. Anderson,* 62 Wn.2d 813, 384 P.2d 867 (1963), a case on which the trial court placed considerable reliance, the court recognized that an order of confirmation cures all

---

[3]Grubbe already had notice and an opportunity to be heard prior to the entry of the child support judgment. There is no assertion that Grubbe as judgment debtor did not receive notice of the levy of execution as required by RCW 6.24-.010. At the time of the levy, Grubbe and his wife Linda were owners of an interest in the Casa del Rey property. The sale to the partnership occurred 14 days later.

irregularities in the sale except jurisdictional defects. In fact, the court noted that an execution sale for an amount in excess of the judgment has been held to be an irregularity which is cured by an order of confirmation. *See Otis Bros. & Co. v. Nash,* 26 Wash. 39, 66 P. 111 (1901); *In re Estate of Stoops,* 118 Wash. 153, 155, 203 P. 22 (1922). But the court in *Malo* went on to say that where there are no intervening rights involving bona fide purchasers to consider and the original parties have invoked the aid of a court of equity, the relief given will not follow technicalities but will meet simply the ends of justice. In *Malo,* the defendant's ex–wife, who was awarded a $2,000 judgment payable at the rate of $35 a month, prematurely levied on the defendant's property on an accelerated basis. The *Malo* court recognized that installment payments are absolute when due, but the plaintiff accelerated the obligation and included payments not yet due. She purchased the property at a sheriff's sale for a fraction of its true value, but waited to take possession until after the defendant paid off the mortgage indebtedness. She gave her ex–husband no actual notice of her action, and he had no notice of the sale. The court applied equitable principles and concluded that it would be unconscionable to approve the ex–wife's conduct without imposing reasonable terms. Therefore, the court directed that the defendant's ex–husband be given a reasonable time to pay the balance, and if he did so, the sale to the plaintiff would be set aside.

In the instant case, there are marked differences. The plaintiff partnership was formed for investment purposes and to purchase the specific property in question. The general partner, Gemperle, was a King County employee (who worked in the King County Administration Building) and a sophisticated investor/speculator. Parmerter is a university professor with investment as a sideline. The debtor Grubbe has a colorful personal history, with a lengthy assortment of debts and tax liens outstanding as indicated in the title report known to all the parties. It is undisputed that the partnership's general partner Gemperle was present imme-

diately following the sale. The respondent offers no reason for failing to object to confirmation of the sale. In such circumstances the order confirming sale is conclusive and cannot be set aside on the basis of the irregularities the partnership now asserts make the sale invalid.

## VALIDITY OF THE EXECUTION

Nevertheless, we must consider if Flynn could levy execution against the Grubbes' interest in the Casa del Rey, which they presumptively held as community real property, for a separate antenuptial debt of Edward Grubbe.

The Calhoun judgment for child support was entered against Edward Grubbe on February 22, 1973. Edward married Linda Peters Grubbe on October 3, 1975. Thus, the Calhoun judgment was an antenuptial obligation for child support reduced to a judgment within 3 years of Edward's subsequent marriage. A basic tenet of Washington community property law states that community assets are not liable for the separate debts of a spouse. *Achilles v. Hoopes*, 40 Wn.2d 664, 245 P.2d 1005 (1952). However, an equally basic principle requires that an obligated parent meet all antenuptial responsibilities for child support. *See Fisch v. Marler*, 1 Wn.2d 698, 715–16, 97 P.2d 147 (1939). In the recent case of *Van Dyke v. Thompson*, 95 Wn.2d 726, 630 P.2d 420 (1981), our Supreme Court considered the conflict between these two principles and concluded that only the earnings of an obligated spouse were subject to that spouse's antenuptial responsibility for child support. *Van Dyke*, at 732. At the same time, the court explicitly held that "the earnings of a noncustodial, nonobligated stepparent are not subject to the antenuptial obligation of child support." *Van Dyke*, at 733.[4]

In applying these principles to the instant case, we

---

[4] The court in *Van Dyke* rejected the "prior claim" reasoning of *Hinson v. Hinson*, 1 Wn. App. 348, 461 P.2d 560 (1969), which held that a woman who marries a man whose children are in the mother's custody enters the new marriage subject to the prior claim of child support against the community property of the new marriage.

conclude that Edward Grubbe's earnings, but not Linda Grubbe's earnings, are subject to the child support obligation decreed by the Calhoun judgment. In addition, under the provisions of RCW 26.16.200,[5] both Edward Grubbe's earnings and accumulations are subject to his child support obligation which was reduced to judgment within 3 years of Edward's marriage to Linda. *See Watters v. Doud,* 92 Wn.2d 317, 322, 596 P.2d 280 (1979). However, there has been no showing as to what Edward and Linda Grubbe used to acquire their interest in the Casa del Rey property. Because the trial court made no finding on this critical issue, we must remand this case to the trial court. Only if the Casa del Rey property was an earning and accumulation of Edward Grubbe, was it subject to levy of execution for the Calhoun judgment. The recently decided case of *deElche v. Jacobsen,* 95 Wn.2d 237, 622 P.2d 835 (1980), adds a further perplexing dimension to this case. Our Supreme Court in *deElche* allowed the victim of a tort committed by a married man, for his sole benefit and not for the community benefit or in the management of community business, to reach the tort–feasor's half interest in community personal property when the victim could not satisfy her judgment out of the tort–feasor's separate property. Whether the decision is limited to tort judgments is not clear. Logically the *deElche* rule ought to extend to contractual debts as suggested in Justice Horowitz' dissent. *See* 57 Wash. L. Rev. 211 (1981). But the court suggested

---

[5]RCW 26.16.200 provides:

"Neither husband or wife is liable for the debts or liabilities of the other incurred before marriage, nor for the separate debts of each other, nor is the rent or income of the separate property of either liable for the separate debts of the other: *Provided,* That the earnings and accumulations of the husband shall be available to the legal process of creditors for the satisfaction of debts incurred by him prior to marriage, and the earnings and accumulations of the wife shall be available to the legal process of creditors for the satisfaction of debts incurred by her prior to marriage. For the purpose of this section neither the husband nor the wife shall be construed to have any interest in the earnings of the other: *Provided further,* That no separate debt may be the basis of a claim against the earnings and accumulations of either a husband or wife unless the same is reduced to judgment within three years of the marriage of the parties."

that there was a distinction between torts and debts. *deElche,* at 246 n.3. In the case before us, there has been no showing that the judgment creditors could not satisfy their claims out of Edward Grubbe's separate property. Therefore, even if the rationale of *deElche* could apply to debts, the judgment creditors here have not met the necessary condition of exhausting the judgment debtor's separate property before attempting to reach community personal property. In addition, the present case concerns community real property, not community personal property as in the *deElche* case. Consequently, we decline Parmerter's suggestion that we apply *deElche* to the present case.

## PARMERTER'S REDEMPTION

Parmerter's redemption is also subject to the provisions of RCW 26.16.200. Parmerter as the assignee of the Lieurance judgment had a lien of judgment against all real estate of the judgment debtor, Edward Grubbe. *See* RCW 4.56-.190–.200. If this lien of judgment did, in fact, attach to the Casa del Rey property, Parmerter had the right to redeem it. *See* RCW 6.24.130(2); *Graves v. Elliott,* 69 Wn.2d 652, 419 P.2d 1008 (1966). However, because the Lieurance judgment was Edward Grubbe's separate antenuptial obligation, it could only attach as a judgment lien on the Casa del Rey property if that property were an earning and accumulation of Edward Grubbe. *See* RCW 26.16.200.

## THE PARTNERSHIP'S REDEMPTION

As the successor in interest of the judgment debtor, the partnership had the right to redeem the property. RCW 6.24.130(1). However, the partnership's tender of $670 was insufficient to redeem. To effect a redemption within 1 year after a sheriff's sale, the redemptioner must pay the amount of the *bid* plus interest and any assessment or taxes paid after purchase. RCW 6.24.140. Therefore, even if Parmerter's redemption were a nullity and even if the Calhoun judgment were only $450 plus interest, the partnership's tender was still ineffective because it did not cover the amount of Flynn's bid plus interest. In redeeming from

Parmerter, the partnership had to pay the amount tendered by Parmerter plus interest within 1 year of the sheriff's sale. RCW 6.24.160. Thus, the partnership also failed to redeem from Parmerter.

CONCLUSION

Flynn's right to levy execution and Parmerter's right to redeem were enforceable only if the Casa del Rey property were an earning and accumulation of Edward Grubbe. Thus, there is an issue of material fact which cannot be resolved by summary judgment. Therefore, we reverse and remand this case for trial.

ANDERSEN, C.J., and CALLOW, J., concur.

Reconsideration denied June 24, 1982.

Review denied by Supreme Court November 17, 1982.