672 P.2d 1035
**Robert S. CURTIS, Plaintiff-Respondent,**

v.

**Mitt CAMPBELL, Defendant-Appellant.**

No. 14394.

Supreme Court of Idaho.

Sept. 29, 1983.

Rehearing Denied Dec. 22, 1983.

John B. Kugler, Pocatello, for defendant-appellant.

Robert S. Curtis, pro se.

SHEPARD, Justice.

This is an appeal from orders of the district court denying appellant Campbell's various motions to quash writs of execution and a writ of assistance. We affirm.

On July 23, 1979, plaintiff Curtis obtained a judgment against Campbell for $9,051.58 plus costs. No appeal was taken from that judgment and no question is raised here regarding its validity or amount. Curtis has only sought to collect that judgment and his patience is finally rewarded. The patience of the district judge has also been exemplary. For the following two years Curtis attempted to obtain satisfaction of the judgment through negotiations and thereafter by obtaining seven successive writs of execution. In March 1981, after previous writs had been either quashed by court order, returned satisfied in part or returned satisfied, the sixth writ of execution was issued claiming Campbell still owed $2,813.73. Pursuant thereto, the sheriff gave notice that Campbell's used mobile home would be sold at public auction. Campbell asserts that the sheriff would not allow him to bid beyond the amount of cash he, Campbell, had on hand and Curtis bid on the mobile home of $600. On June 1, 1981, the court heard Campbell's motion to quash the sixth writ of execution and ruled that Campbell still owed $1,138.69 plus interest, and that if Campbell paid such amount within 30 days, the mobile home, although sold, would be released from the sheriff's levy. Campbell made no such payment.

On July 9, 1981, a seventh writ of execution was issued against Campbell in the amount of $615.19; that amount was garnisheed from Campbell's bank account and $549.39 was paid to Curtis. Thereafter Curtis received a certificate of sale for the mobile home from the sheriff and when Campbell refused to vacate the home, Curtis petitioned the district court for a writ of assistance. Campbell paid $650 into court, moved to declare the sheriff's return void, and moved for entry of satisfaction of the judgment. On October 6, the court ruled that there had been no appeal from his order of June 1, 1981, that Campbell's motions were denied, and that the sums recovered from the garnishment of Campbell's bank account and from the sale of the trailer satisfied the judgment. Forty-two days after the issuance of that order of October 6, this appeal was filed "from post trial motions and orders, including the order dated October 6, 1981 . . ." The only matters properly before us are those which were before the district court in its order of October 6, 1981.

We view the order of the court dated June 1, 1981, as the equivalent of an

order confirming the execution sale. As such it cured all irregularities in the sale, excepting only jurisdictional defects, and that order was final and appealable. *Casa del Rey v. Hart,* 31 Wash.App. 532, 643 P.2d 900 (1982). Since no timely appeal was perfected from that order, we consider none of Campbell's assertions regarding irregularities in the execution sale.

■ Campbell asserts that the sheriff did not make a timely return on the writ of execution dated March 23, 1981, and hence it is void. We disagree. A late return on a writ of execution does not affect the validity of a sale made pursuant to a writ of execution and the provisions regarding a return date are directory and not mandatory. Failure to comply with such provisions does not affect the title of the purchaser at an execution sale, particularly where no intervening third party rights are involved. *Gandiago v. Finch,* 46 Idaho 657, 270 P. 621 (1928); *Inman v. Brown,* 59 N.M. 196, 281 P.2d 474 (1955).

■ Campbell also asserts that because the seventh writ of execution was issued prior to the time there had been a return on the sixth writ, the sixth writ and the sale thereunder are both void. We disagree. A party will not be heard to complain of irregularities in execution proceedings when those irregularities are not prejudicial. *Inman v. Brown, supra. See Woodley-Griggs Boiler Repair, Inc. v. Sanders,* 626 S.W.2d 410 (Mo.App.1981); *Bertonazzi v. Mechanics Nat. Bank,* 379 Mass. 920, 400 N.E.2d 867 (1980); *Moore v. Dade Glass & Mirror Co., Inc.,* 357 So.2d 221 (Fla.App.1978). When a writ of execution issues with a still-unreturned prior execution outstanding, the second writ is at most voidable, and a motion to quash should be denied if the matter which caused issuance of the writ to be erroneous or irregular has been removed. *Mosher v. Ganz,* 42 Ariz. 314, 25 P.2d 555 (1933).

■ We hold that the court's issuance of the writ of assistance was proper and its order is affirmed. The writ of assistance is an equitable remedy and the power to issue

such writ stems from the need of the court to enforce its own decrees. *United States Nat. Bank of Oregon v. Chavez,* 281 Or. 329, 574 P.2d 647 (1978). The writ of assistance is a common law remedy to place a purchaser of property at a sheriff's sale into possession when that possession is withheld by any party bound by the decree. *See Eagle Rock Corp. v. Idamont Hotel Co.,* 60 Idaho 639, 95 P.2d 838 (1939). The only question to be adjudicated when the propriety of such writ is an issue is "whether applicant has a right, as against the party in possession to use the writ to obtain possession." *Id.* 60 Idaho at 648, 95 P.2d at 841, and if the party in possession does not have a colorable claim of right to possess the property, the writ should issue. *Booth v. Shepherd,* 63 Idaho 523, 123 P.2d 422 (1942). We find no question but that the court had the right to. enforce its decree and writ of execution and that as between Campbell and Curtis by virtue of the sheriff's sale, the title was held by Curtis.

■ Although the district court did not err in ordering the entry of satisfaction of judgment, we note that pending this appeal Campbell has remained in possession of the mobile home; he is therefore liable for the reasonable rental value thereof for the period beginning April 3, 1981 and ending when possession is relinquished to Curtis. *See Frost v. Eggeman,* 638 P.2d 141 (Wyo.1981).

The orders of the district court are affirmed. However, the cause is remanded to the district court for dissolution of the stays heretofore granted and, as noted herein, for a determination of the reasonable rental value of the mobile home during the period indicated and for an additur in favor of Curtis for that amount. Costs to respondent. Since Curtis has appeared in this appeal *pro se* no attorney fees are allowed.

BAKES, J., concurs.

DONALDSON, C.J., concurs in the result.

HUNTLEY, Justice, dissenting.

The lesson taught by this case is:

"If the majority of an appellate court wishes to affirm 'no matter what'—

The affirmance will issue 'no matter what' "

I join the dissent of Justice Bistline and add my own because the record clearly establishes several reversible errors committed by the trial court in refusing to set aside the mobile home sale, which errors were assigned on appeal.

The majority neither addresses the errors nor justifies its failure to do so.

There are at least four reasons the court erred in refusing to quash the execution on and sale of the motor home:

(1) There can issue but one writ of execution at a time within a single county, and the previous writ had not been returned nor the proceeds of it accounted for at the time the subject writ issued. I.C. § 11–107

(2) The sheriff's levy was not properly made, whether the mobile home be considered real or personal property in that (a) if real property, six days' notice of sale rather than the required thirty days was given; (b) if personal property, the sheriff neither took the required possession nor utilized the alternative of a sheriff's keeper.

(3) The sheriff improperly refused to permit Campbell to bid an amount in excess of the cash he had with him, thus refusing Campbell a reasonable time to bring the cash payment for a successive bid (30 Am. Jur.2d 664, Executions § 375).

(4) The writ and levy were for an amount in excess of the balance due Curtis.

These four discrepancies (and several others noted by Justice Bistline) both individually and collectively void the levy and sale, thus compelling a reversal with directions to set aside the sale and determine the balance, if any, due from Campbell to Curtis.

BISTLINE, Justice, dissenting.

At one time the Court on releasing an opinion also took on the added task of writing the syllabus. For this one case I am inclined to suggest the following as the syllabus to the opinion which the Court releases this day.

SYLLABUS: A judgment creditor obtained from the clerk a writ of execution addressed to the sheriff and directing the sheriff to make on execution of the writ the sum of $2,813.73. The judgment creditor instructed the sheriff to make said sum by levying upon and selling a skyline mobile home in which the judgment debtor lived. The sheriff, acting in obedience to the judicial process and the said instructions, advertised the mobile home for sale to be held on April 3, 1980, the notice being posted on March 27, 1980. There is no evidence that the sheriff in making levy took the mobile home into his possession as is required by law. The judgment creditor bid $600.00 at the sale and the sheriff eventually gave him a bill of sale to the mobile home. Prior to the sale, and on April 2, the judgment debtor moved to quash the writ on the grounds that it stated a false amount and did not reflect payments made oñ the judgment. The motion was noticed up for the 13th day of April— which motion was not heard by the district court until the 20th—all of these dates being in April following the posting of the sale notices on the 27th of March. At the hearing the court did not rule on the motion to quash, but directed the parties to supply evidence as to amounts paid and received on the judgment. The court, on reviewing the evidence, thereafter on June 1st ruled that all that was owed on the judgment was the sum of $1,138.69—thus establishing that the process issued by the clerk of the court was excessive by approximately $1,675. The court, however, did not rule on the motion to quash the writ, and instead declared that the mobile home (trailer) would be released to the debtor upon his paying the judgment creditor within thirty days the said sum which the court had then determined to be actually due. The court did not order the judgment debtor to do anything, and did not purport to impose any sanctions if the debtor could not or did not within the allotted time put together the amount actually due.

The defendant could not or did not pay off the judgment debt, whereupon the judgment creditor caused another execution to be issued which on garnishment proceedings netted the sum of $615.19. The judgment creditor sought a writ of assistance to enable him to take possession of the trailer (mobile home). The judgment debtor then tendered a cashier's check for $650.00, which with the garnishment proceeds was said to pay off the judgment debt in full. At the same time the judgment debtor urged his yet pending motion to quash the writ pursuant to which the sale had taken place at which the judgment creditor became the high bidder at $600. The court denied the motion without stating any reasons, and at the same time ruled that the judgment creditor would be issued a writ of assistance.

HELD, in a 3–2 opinion authored by Justice Shepard: The order [1] allowing the judgment debtor thirty days to pay off the judgment and thereby obtain a release back of the trailer house (mobile home) was *the equivalent of an order confirming the execution sale*—which sale the judgment debtor had challenged on grounds of the excessively and allegedly fraudulently claimed amount on the writ of execution procured by the judgment creditor.

HELD, also: That the irregularities in conducting the sale, *i.e.*, lack of levy, and seeking out a writ excessive in amount by $1,675, were all cured by the order of June 1, 1981.

HELD, also: That (implicitly) the order of June 1, 1981, was (somehow) appealable, and no appeal having been taken from that order, the court will not consider those irregularities.

HELD, also: On remand the district court will dissolve the stay order which it issued pending appeal, and the district court will enter judgment against the judgment debtor for the reasonable rental value of the mobile home while he remained in possession during the appeal period.

### (END OF SYLLABUS)

The opinion from which the headnote or syllabus is gleaned does not on even cursory examination withstand scrutiny in any of its holdings. The district court never at any time intimated that it considered that it was confirming the sale, or entering a final judgment on June 1, 1981. The particular district judge is capable and well able to express himself in the language of the profession, and is not known to be one who leaves to implication that which is capable of direct statement. Nothing in the record sustains the unsupported statement that the order was the end of all proceedings. When again called upon to rule on the judgment debtor's motion to quash, the district court by order dated October 5, 1981, denied the motion, which was the first time that a ruling was made:

> "IT IS HEREBY ORDERED that defendant's Motion to Declare Sheriff's Return Void . . . be and the same hereby is DENIED."

It is beyond dispute that if, as the majority opinion implies, the district court was on the 1st day of June, 1981, confirming a sale of a trailer house for the bid of $600, where the writ under which the sheriff acted stated the judgment debt due at the excessive amount of $2,813.73, notions of due process and fair play required the district court to so declare itself. It did not do so, and absolutely nothing in the record sustains the majority's bare assertions in these regards.

---

1. The order of June 1, 1981, reads in full:

"For good cause appearing,

"IT IS HEREBY ORDERED that the amount of plaintiff's judgment be reduced by the sum of $53.75. Further, that on a condition that defendant pay the total amount of the judgment owing, to-wit: $1192.44 less $53.75, together with any interest accruing from the last date upon which interest was calculated. The trailer heretofore levied on by the Bannock County Sheriff shall be released from the levy and returned to the defendant, such payment to be made within thirty (30) days from the date hereof.

"DATED this 1st day of June, 1981."
R., p. 82.

Moreover, it takes little experience or reasoning to understand why courts here and elsewhere have forever required that a levy of execution be accomplished by the sheriff's taking of actual physical possession, and, equally, probably more important, that the amount of indebtedness be accurately stated in the writ of execution. The buyer who will bid on a sizeable piece of personalty which is in the possession of, and being lived in by, the judgment debtor is a unique and hard to find buyer. Whatever he pays, he has also bought into litigation. This is especially so where the sale takes place in the face of a pending motion to quash the entire proceeding. It is an equally strange buyer who will engage in competitive bidding against a judgment creditor who is allowed to bid in his judgment and need have no money on the table. Here there could have been no incentive for any interested person to bid at all—knowing all the while that the sheriff's writ authorized the judgment creditor to go as high as in excess of $1,800. The bothersome thing to me in this case is trying to comprehend what motivates the majority to make such a shambles of the law. I simply fail to understand, unless it is a disenchantment with those who put their creditors to litigation. But even then, the record shows that the underlying judgment included an award of attorney's fees, and further that thereafter the judgment creditor found his own way into the system.

Even more bothersome is that with our busy schedule and backlog of cases, I am compelled to write at some length to fully expose what is clearly a grossly erroneous appellate result. To that I turn.

A point of beginning is the statement in Justice Shepard's opinion that "[t]he only matters properly before us are those which were before the district court in its order of October 6, 1981." In that manner the important issues discussed in the briefs are neatly circumvented; rendered of no moment are the undisputed facts that there never was the essential ingredient of an actual levy on the used 1970 Skyline Mobile Home, and that the district court, time after time, had quashed writs of execution

Curtis had obtained from the clerk of the court which were misrepresentations of the amounts actually due him from Campbell.

The rationale which is said to allow this short-circuiting of Campbell's appeal is an imagined ruling in that order of October 6, 1981 "that there had been no appeal from his order of June 1, 1981 . . . ." *Putting aside the singular fact that no such contention has been made by Curtis,* the record does not support Justice Shepard's declaration that the trial court so ruled. The district court's order of June 1, 1981, was not responsive to the motion which was filed on April 2 by Campbell. The motion before the court was to quash a writ of execution the issuance of which Curtis had procured on March 23, 1982, and to set aside any sale that was had under that writ, on the grounds and for the reason that the execution included excessive interest and costs not recoverable because of not having been included in the judgment, plus the further grounds that Curtis had failed to give credit for payments made. R., p. 73. (The court had previously on the 8th day of December quashed an earlier writ on similar grounds urged by Campbell. R., p. 68.) The order of June 1, 1981, was the second in line of orders issued by the court in acting on the pending motion to quash. At the first hearing on the 20th of April, 1981, the court did not take up Campbell's motion to quash; it instead required the parties to submit affidavits which would enable the court to establish the actual amount due on the judgment. The parties complied.

Thereafter the court, still not passing on the motion to quash, after reviewing the information submitted, arrived at the figure of $1,138.69 due on the judgment. R., p. 82. At this point, keep in mind that the writ of execution which Curtis had obtained from the clerk directed the sheriff to levy against enough of Campbell's real and personal property to make the sum of *$2,813.73;* it was under this writ that the sheriff had sold Campbell's Skyline, even though it is clear from the record that he had not lawfully levied upon it. .

What the court did do on June 1, 1981, which in time was after Curtis had purchased the Skyline, was to seek an end to the whole thing without having to then pass on the still pending motion. Justice Shepard has correctly mentioned the patience of the district judge who had been plagued by motions to quash, all of which were attributable to Curtis's inaccuracies as to the amount actually due, and irregularities on the sheriff's part. It is not strange, then, that the district judge hoped to end the ordeal by providing that if Campbell, within thirty days, would and could come up with the total amount determined as yet owing on the judgment, the Skyline would be released from the levy and returned to Campbell. (Not to forget, however, that it had never been taken from Campbell; nor had it been properly levied upon.)

It is at once obvious that the court could not *order* Campbell to pay the judgment, and he did not purport to order that Campbell do so. All the judge did was to provide a possible solution which, if Campbell could or would come up with the amount yet due on the judgment, would avoid the court's once again quashing the outstanding writ, as it already had done on two, maybe three, occasions. There was no authority for the type of order entered by the court, but there was no harm done by it. For certain, the court did properly establish what was owed by Campbell—in respect of which Curtis has not been yet heard to say that he was not guilty of using the court's process in an attempt to extract from Campbell $1,675.04 more than Campbell owed. (The majority avoids this not inconsequential fact.)

The court's order did not state nor could it lawfully have stated, that on Campbell's failure to come up with $1,138.69 within thirty days, his pending motion to quash would be denied. Had it so provided it would have had no authority in law, and would in that respect be likened unto a contempt penalty or punishment for nonpayment of ordinary debt.

Campbell did not come up with the money. Curtis, in the face of a motion still pending to quash the prior writ of execution, and without the return on the same having been filed, obtained yet another writ by virtue of which he levied upon Campbell's bank account, from which he took $549.39. That amount together with the $600 Curtis had purportedly bid in part of his then $2,813.17 judgment at the sheriff's sale totaled $1,149.39; Curtis was undoubtedly willing to consider the case closed, but did request of the court a writ of assistance to oust Campbell from possession of the Skyline which Campbell had at all times continued to live in.

The opinion of Justice Shepard, while it recites Campbell's renewed motion to quash the writ of execution under which the sheriff purported to sell his Skyline to Curtis for $600, glosses over the fact that the same motion earlier filed had yet to be passed upon. This bypass of the main issues which have been presented is accomplished by the statement that "[t]he order of the court dated June 1, 1981, is the equivalent of an order confirming the execution sale [of the Skyline pursuant to the writ which was presented upon judgment debt balance over twice as actually owed] ...." This remarkable conclusion, *over and above being a contention neither briefed, argued, or even mentioned by either party,* is said to be supported by a single authority, *Casa del Rey v. Hart,* 31 Wash.App. 532, 643 P.2d 900 (1982) a case not cited by either party. It is also a case which does not support the novel proposition advanced by Justice Shepard, but in fact cuts against it. The true holding of *Casa del Rey v. Hart* is exactly as one would expect from a reputable court. In that case there was, as here, a valid monetary decree in favor of Francis Maye Calhoun, requiring a set sum of $150 per month child support from and after a set date of February 2, 1972. The judgment debtor and obligor was Edward Grubbe. Ms. Calhoun assigned the judgment to John Flynn, and Flynn used the assigned judgment to execute against Grubbe's interest in the Casa del Rey real property for the $14,028 which he calculated Grubbe then owed under the judgment.

The sheriff levied upon Grubbe's interest in the Casa del Rey apartment building and sold the interest to Flynn, who was the sole bidder bidding in this assigned judgment. After the levy and before the sale, Grubbe conveyed out to the Casa del Rey limited partnership. A Mr. Lieurance, owner of a $2,000 judgment against Grubbe, assigned his judgment to a Mr. Parmerter. The assignment was in point of time after the Casa del Rey limited partnership bought Grubbe's interest. Parmerter than redeemed Grubbe's interest from Flynn, *and obtained an order confirming the execution sale* pursuant to the writ obtained by Flynn.

Thereafter the Casa del Rey limited partnership, on its assertion that the sum certain due on the Calhoun judgment was only $670, tendered that amount to redeem from the Calhoun judgment and sale. (It also contended that the Lieurance judgment was not a lien on the Casa del Rey apartment property.) In the limited partnership's quiet title action to establish its contentions, "the trial court concluded that the writ of execution was not validly issued because the supporting judgment was not in a sum certain." 643 P.2d at 902.

The Washington Court of Appeals held on abundant authority that accrued unpaid monthly child support installments will support a writ of execution, a total sum certain being easily determinable by simple calculation. *Id.* at 903. That is likely so in Idaho, and whether so or not so, is not an issue here.

At issue in the Casa del Rey quiet title action were claimed irregularities in the execution sale, primarily that no notice had been given to the debtor Grubbe and his wife of the filing of a praecipe for issuance of the writ. Parmerter, who took the appeal to the Court of Appeals contended that "the claimed irregularities should have been raised in opposition to the proposed order confirming regularity of the execution sale," *id.* at 904, relying upon R.C.W. 6.24.-100(4) which states in part:

"An order confirming a sale shall be a conclusive determination of the regulari-

ty of the proceedings concerning such sale as to all persons in any other action, suit or proceeding whatever."

*In agreeing with Parmerter's contention, the Washington court stated:*

"An order confirming an execution sale is a final judgment and appealable. *Northern Commercial Co. v. E.J. Hermann Co.,* 22 Wash.App. 963, 593 P.2d 1332 (1979). In *Malo v. Anderson,* 62 Wash.2d 813, 384 P.2d 867 (1963), a case on which the trial court placed considerable reliance, the court recognized that an order of confirmation cures all irregularities in the sale except jurisdictional defects. In fact, the court noted that an execution sale for an amount in excess of the judgment has been held to be an irregularity which is cured by an order of confirmation. *See Otis Bros. & Co. v. Nash,* 26 Wash. 39, 66 P. 111 (1901); *In re Estate of Stoops,* 118 Wash. 153, 155, 203 P. 22 (1922). But the court in *Malo* went on to say that where there are no intervening rights involving bona fide purchasers to consider and the original parties have invoked the aid of a court of equity, the relief given will not follow technicalities but will meet simply the ends of justice. In *Malo,* the defendant's ex-wife, who was awarded a $2,000 judgment payable at the rate of $35 a month, prematurely levied on the defendant's property on an accelerated basis. The *Malo* court recognized that installment payments are absolute when due, but the plaintiff accelerated the obligation and included payments not yet due. She purchased the property at a sheriff's sale for a fraction of its true value, but waited to take possession until after the defendant paid off the mortgage indebtedness. She gave her ex-husband no actual notice of her action, and he had no notice of the sale. The court applied equitable principles and concluded that it would be unconscionable to approve the ex-wife's conduct without imposing reasonable terms. Therefore the court directed that the defendant's ex-husband be given a reasonable time to pay the balance, and if he did

so, the sale to the plaintiff would be set aside."

643 P.2d at 904.

It is thus seen that in Washington there is a statutory requirement for confirming an execution sale of *real property* or an interest therein. It is then seen that once an order of confirmation is entered, the same being an order sufficiently final for appeal purposes, irregularities in the execution sale cannot be claimed in a late proceedings. Such is the extent of *Casa del Rey v. Hart, supra.*

Nothing therein sustains the statement in the Justice Shepard opinion that the order in this case, entered on June 1, 1981, was the equivalent of an order confirming the sale which was being challenged for rather gross irregularities. On the contrary, that order was a judicial determination that Curtis had caused the court's clerk to issue a writ of execution for a grossly excessive amount. Had Campbell not contested the validity of the writ and proceedings thereunder, and had Campbell had $2,803.73 on hand, he *could have* paid that amount (through the sheriff) to Curtis, and thereby been judicially mulcted out of $1,600. Fortunately for him he had only about $500 on hand, and equally fortunately, his attorney took appropriate action.

All of legal significance that the district judge accomplished on June 1, 1981, was to determine the correct amount due on the judgment. While he could have and should have at that time again quashed the writ and voided the sale, instead he opted to hopefully attempt an absolutely final conclusion by leaving matters as they were for 30 days, in which amount of time the court apparently believed a man could raise roughly twelve hundred dollars. Unfortunately, there are many people who cannot do so. Campbell did not. Curtis moved swiftly with his final writ, although there had been no return filed to the prior one, and seized money which Campbell had in the bank. Campbell again moved that the prior execution be quashed. His earlier motion had *not* been ruled on. Finally it was, and then he appealed.

The record is beyond dispute that under the statutes and case law which governs such execution proceedings in Idaho the sale should have been voided. Curtis, in *his* brief, tells us: "The value of the mobile home was stated by Reed Nessen of Reed's Mobile Home of Salt Lake City to be no more than $2,000 to $3,000." Gross inadequacy of consideration is an issue which, too, was properly raised, but neatly circumvented in the majority opinion. An earlier Idaho Supreme Court opinion held:

"As a general rule, mere inadequacy of consideration is not sufficient ground for setting aside a sheriff's sale, but it is uniformly held that gross inadequacy of consideration, coupled with very slight additional circumstances, is sufficient. *Federal Land Bank of Spokane v. Curts,* 45 Idaho 414, 425, 262 P. 877; *Fiolle v. First Nat. Bank of Thomas,* 173 Okl. 501, 49 P.2d 145; *Rastelli v. Zaca Mining Corp.,* 52 Cal.App.2d 507, 126 P.2d 368.

"The order appealed from is affirmed.

"Costs to respondent."

*Gaskill v. Neal,* 77 Idaho 428, 433, 293 P.2d 957, 960 (1956).

The Oregon Supreme Court stated the principle in this manner:

"Furthermore, the price paid by the purchaser was so grossly inadequate as to shock the conscience of the court: 33 C.J.S., Executions, § 233, p. 492.

."The judgment debtor, to do equity, tendered into court for the purchaser the amount of the purchase price, together with interest thereon. *Setting aside the sale merely leaves the parties in status quo.*"

*Ahlstrom v. Lyon,* 169 Or. 629, 131 P.2d 219, 221 (1942) (emphasis added).

An Arizona court recently said this:

"A court may order an execution sale set aside on the basis of two grounds: First, the purchase price received at the sheriff's sale may be so inadequate as to shock the conscience of the court and justify setting aside the sale, *Nussbaumer,* [*v. Superior Court in and for County of Yuma,* 107 Ariz. 504, 489 P.2d 843 (1971)] *supra; Wiesel v. Ashcraft,* 26

Ariz.App. 490, 549 P.2d 585 (1976). Second, where there is an inadequacy of price which in itself might not be grounds for setting aside the sale, slight additional circumstances or matters of equity may so justify."

*Mason v. Wilson,* 116 Ariz. 255, 568 P.2d 1153 (App.1977).

The district court order was in error and must be reversed.

HUNTLEY, J., concurs.